HAMILL, J.T.C.
In these matters the Salt and Light Company seeks exemption from local property taxes for seven properties in Mount Holly Township.[1] Salt and Light claims that the properties qualify for exemption because they are used for the charitable purpose of providing temporary housing and counseling services to the homeless. In addition, Salt and Light objects to the township’s procedure for revoking the exemptions. Mount Holly maintains that the properties are taxable largely because Salt and Light is compensated on a fee-for-service basis by the State. Mount Holly further argues that the company’s sizable net income and sizable cash balance for 1994 demonstrate that Salt and Light operates as a business rather than on a nonprofit basis.
*278 First to be addressed is the manner in which the exemptions were revoked.
During 1994 the Mount Holly assessor determined that Salt and. Light’s properties did not qualify for tax exemption. The assessor based his determination on answers to a questionnaire sent to all private, charitable, and religious organizations in the township. The questionnaires were triggered because the assessor noted that Salt and Light had completed two exemption applications (for properties not involved in these appeals) indicating that the properties were not being leased when the township solicitor knew that this was not the case. When the questionnaires were returned for the seven properties confirming that rent was being received, the assessor returned the properties to the tax rolls for the 1994 tax year.
Salt and Light received notice of the revocations of exemption by way of tax bills issued in October 1994 and appealed the determinations to the Burlington County Board of Taxation. The county board upheld the assessor’s revocation of tax exemption but returned the properties to the tax list commencing January 1, 1995, rather than January 1, 1994, as requested by the assessor.
The county board’s judgments, rendered on December 15, 1994, and mailed on January 6, 1995, specify that they are with respect to the 1994 tax year and include amended memoranda of judgment explaining that the tax exempt status of the properties is revoked as of 1994 but that the omitted assessments will not be placed on the tax books until January 1,1995.
Salt and Light appealed to the Tax Court challenging the county board’s judgments for the 1994 tax year denying tax exemption beginning with the 1995 tax year.
Mount Holly filed timely counterclaims asserting that the properties should have been returned to the tax list for all of 1994 as requested by the assessor rather than as of January 1, 1995, as found by the county board.
Consistent with the county board’s judgments, the properties were assessed as taxable for the 1995 tax year. Salt and Light *279 did not appeal those assessments, apparently in the belief that its appeals of the 1994 judgments sufficed to protect it for the 1995 tax year.
There is some question whether the assessor had the authority to revoke the exemptions for the 1994 tax year.[2] However, since the county board in fact did not revoke the exemptions for 1994, the question is important only as bearing on whether there is any case properly before me. That is, if the 1994 assessments were improper for procedural reasons, arguably the county board should have dismissed on that basis and refused to deal with 1995 since no appeals were before it for that year.
Assuming, without deciding, that the 1994 assessments were procedurally defective and should have been dismissed for that reason, I believe I must nevertheless hear the matters as they pertain to the revocation of exemption for the 1995 tax year. Having received 1994 judgments in its favor that nevertheless revoked its exemptions for 1995, Salt and Light was left with no choice but to appeal the 1995 denials based on the 1994 judgments. Had it not done so, the company would have risked the possibility that any 1995 appeals would have been dismissed on the basis that the company had not timely appealed the 1994 judgments. Due to the peculiar circumstances of this case, I will therefore address the county board’s judgments on the merits as they pertain to the 1995 tax year.
*280 The applicable exemption statute is N.J.S.A. 54:4-3.6. It includes an exemption for “buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... charitable purposes____” In addition to the requirements of charitable organization and use, the' statute requires that the entity claiming the exemption own the property in question, be authorized to carry out the purposes for which the exemption is claimed, not be operated for profit, and not operate the buildings for which the exemption is claimed on a for-profit basis.
There is no question that Salt and Light meets some of the statutory requirements for exemption. The company’s amended certificate of incorporation establishes that it is organized exclusively for charitable purposes. It is equally clear that Salt and Light owns the properties in question, and is authorized to carry out the purposes for which exemption is claimed. The questions to be decided are whether Salt and Light’s buildings are used for a charitable purpose and whether the company and the buildings are operated on a nonprofit basis.
Salt and Light was incorporated under the nonprofit corporation law in 1986. The notes to the company’s financial statements and the opening paragraph of the company’s agreement with residents describe the company as a nonprofit organization that provides emergency housing and a “supportive self-help program for homeless people” including single women and men and families with dependant children. The self-help program includes “assistance in seeking job training, employment, education, transportation, child care, medical services and permanent affordable housing.” Salt and Light does not actually provide job training, education, child care, etc. Rather, its staff provides advice and assistance to the residents in obtaining these benefits.
During 1994 Salt and Light operated approximately twenty-four residences for the homeless. The residences were purchased with United States Department of Housing and Urban Development (HUD) monies or Federal Home Loan grant monies and renovated through a combination of government grants and funds generated by Salt and Light (presumably foundation grants and charita *281 ble contributions). Of the seven properties in Mount Holly at issue in these appeals, four provide housing to single adult males, one provides housing to women with or without children, and two provide housing to families.
Approximately two-thirds of the 127 residents in Salt and Light’s program receive public assistance. One type of public assistance is temporary shelter aid for the homeless. Under this program Salt and Light receives $36 per day per single adult, $33 per day for an adult with children, $16 per day for a school age child, and $11 per day for a preschool child. The fees are set by the county and distributed by the municipal welfare director. The remaining one-third of the residents are not eligible for public assistance. To the extent they are able, these residents pay up to 30% of their income to Salt and Light as rent. The rental payments are below market. For example, Salt and Light’s executive director testified that one of the properties at issue is currently occupied by a working mother with two children. The woman pays $140 per month in rent, which is 30% of her monthly income, for a two-bedroom house. Under HUD § 8 regulations, 24 C.F.R. § 880.203(a), the market rent in Burlington County, for a two-bedroom house is $680 according to Salt and Light’s executive director. In the private market in Mt. Holly, a one-bedroom house can be rented for $400-450 per month. Individuals who have no source of income pay no rent to Salt and Light, and no individual is required to leave a residence due solely to inability to pay.
The maximum stay in Salt and Light Housing is twenty-four months. The maximum period for which the State provides temporary shelter aid to the homeless is five months. N.J.AC. 10:82 — 5.10(f).[3]
*282 Each residence for single adults has a resident manager who receives an apartment rent-free from Salt and Light. The managers are generally individuals who at one time were homeless and went through the company’s program. The resident managers are responsible for cleaning and maintaining the property in which they live.
Salt and Light requires each resident to enter into an agreement that sets forth a basic code of conduct and various house rules, including attendance at mandatory counseling meetings, limitation on visitors, a curfew, prohibition of alcohol and drug use, and care and use of the residence.
During 1994, in addition to the resident managers, Salt and Light had a staff of sixteen individuals, who operated out of the company’s headquarters in Mount Holly. Some of these individuals were case managers, who provided counseling to the residents in an attempt to solve the problems that had caused the homelessness. Each case manager met at least twice a week for forty-five minutes to an hour and a half with each resident. During the counseling sessions the staff provided advice and assistance in obtaining employment and needed services such as medical care, child care, education, job training, etc. In some cases the staff taught basic living skills such as cleaning and cooking.
Individuals who disobey Salt and Light rules in a deliberate, open, and hostile manner may be required to leave the program. On the other hand, Salt and Light attempts to keep individuals who disobey the rules unintentionally. No one is turned away for financial reasons, e.g., if an individual’s eligibility for public assistance ends during the twenty-four months that Salt and Light provides housing and counseling.
According to Salt and Light’s executive director, most of the homeless that the company serves earn no more than 25% of the median income, which places them among the poorest of low income individuals.
Mount Holly concedes that the above-described activities are worthy endeavors but insists that the buildings are not exempt *283 from local property tax because most of Salt and Light’s services are paid for by government agencies. As indicated above, approximately two-thirds of Salt and Light’s resident population receive some form of government welfare payment which is distributed to the company. These payments are substantial, amounting for a single adult to $1088 per month ($36 per day x 30 days per month). Salt and Light’s financial statements confirm this fact. Approximately 66% of Salt and Light’s 1994 revenues derived from fees received from a combination of government agencies for the homeless and individuals paying up to 30% of their income in rent. Approximately 30% was derived from government and foundation grants, and 3-4% was derived from private contributions. Mount Holly argues that the essential characteristic of a charity is the performance of a service that government would otherwise have to provide. If, as is the case here, government has to pay an organization to perform that service, the organization is not relieving government from a burden and should therefore not be considered a charity for local property tax purposes.
As evidence that Salt and Light does not operate on a nonprofit basis, Mount Holly points to Salt and Light’s 1994 financial statements. These statements reflect total revenue of approximately $1 million, total expenses of approximately $800,000, and an excess of revenue over expenses of approximately $200,000. The statement of cash flows indicates an increase in cash of approximately $22,000 during the course of the 1994 fiscal year and a cash balance at the end of the 1994 fiscal year of approximately $41,000. Moreover, according to Mount Holly, Salt and Light is competing with private motels and hotels, which receive $35-$40 per day for a homeless individual and are not tax exempt.
Salt and Light responds that the excess revenue and cash flow at the end of its 1994 fiscal year were not typical of its financial situation and that it has substantial financial obligations which quickly consume any excess cash. As to its alleged competition with for-profit motels and hotels, Salt and Light responds that the motels and hotels that house the homeless provide no programmatic services and frequently no cooking facilities and that a *284 traditional shelter for the homeless in Burlington County, which provides a bed and three meals a day, receives $52 per individual. According to Salt and Light, it provides not only housing for the homeless but also services and counseling in an attempt to cure the basic problems that produce homelessness. Its program, therefore, cannot be equated with housing provided by private hotels and motels and, when compared to a traditional shelter for the homeless, Salt and Light provides its services at lower cost.
The first question is whether the properties at issue are used for charitable purposes.
In Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 261 A.2d 143 (1970), which dealt with a claimed local property tax exemption for a retirement community, our Supreme Court turned to a definition provided by the Supreme Court of Illinois in Coyne Electrical School v. Paschen, 12 Ill.2d 387, 146 N.E.2d 73, 79 (1957). In the words of the Illinois court, a charitable use for local property tax purposes is:
[A]n application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government
[55 N.J. at 284, 261 A.2d 143]
Based on this definition, our Supreme Court concluded that there is no precise definition of the term “charity.” Rather, “the determination of whether property is devoted to charitable purposes depends upon the facts or circumstances of each case.” Presbyterian Homes, supra, 55 N.J. at 285, 261 A.2d 143. The Court continued:
As a guide, however, it should be borne in mind that a sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be undertaken at public expense.
[.Ibid.]
Applying these principles, the Court concluded that the Meadow Lakes retirement home (which was the subject of the Presbyterian Homes tax appeal) was not tax exempt. Although organized as a nonprofit corporation, nothing in the corporation’s organizational *285 documents or residential agreements obligated the corporation to care for persons who became unable to meet their financial obligations or became unmanageable due to illness. Id. at 286, 261 A.2d 143. If a resident was terminated for financial reasons, the State might become obligated to provide care. Noting that the charging of fees does not necessarily vitiate a charitable purpose, the Court nevertheless concluded that the arrangement between Meadow Lakes and its residents was commercial in nature because the more desirable living space was allocated based on higher initial and monthly payments. Id. at 287, 261 A.2d 143. The Court made clear that care of “the needy aged is a proper concern of government, and property used for that purpose has been held to be exempt from taxation,” but concluded that “the care of financially independent elderly persons” did not qualify the property for exemption. Id. at 288, 261 A.2d 143.
Mount Holly does not, and could not, dispute the proposition that, were it not for the particulars of Salt and Light’s financial arrangements, providing housing to the homeless on a not-for-profit basis qualifies as a charitable use. There is no question that housing the homeless ensures one of the basic necessities of life to an indefinite number of persons who are too poor to, or otherwise incapable of, obtaining housing for themselves. See Presbyterian Homes, supra, 55 N.J. at 284, 261 A.2d 143; Church Contribution Trust v. Mendham Bor., 9 N.J.Tax 299, 313-14 (Tax 1987), aff'd as modif., 224 N.J.Super. 643, 541 A.2d 249 (App.Div.1988). Moreover, both the legislative and executive branches of government have recognized that government has an obligation to meet the needs of the homeless. Franklin v. New Jersey Dept. of Human Services, 111 N.J. 1, 12, 19, 543 A.2d 1 (1988) (citing Assembly Resolution No. 63, January 28,1988 and Report of the Governor’s Task Force on the Homeless, October 1985, Appendix C).
What Mount Holly asserts is that there can be no charitable use in this case because, due to its various government subsidies, Salt and Light is not relieving government of a burden that would otherwise have to be undertaken at public expense.
*286 There is no definitive authority in New Jersey bearing on whether receipt of government subsidies on a fee-for-service basis, standing alone, destroys an otherwise charitable use for purposes of local property tax exemption. There are, however, some indications of the appropriate analysis, both in the statute itself and in cases dealing with charities receiving some of their support from other than charitable sources. Thus, N.J.S.A 54:4-3.6 is clear that an otherwise “charitable, benevolent, or religious” use does not become a nonqualifying for-profit use if the charitable, benevolent, or religious use “is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings ... provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent, or religious purposes.” The government subsidies received by Salt and Light amounting to $36 per single adult per day, $33 per adult with dependent children, and $11 or $16 per child are clearly “fees or charges received ... on behalf of [the] beneficiaries using or occupying [Salt and Light’s] buildings.” Moreover, the buildings in question are controlled by Salt and Light and the fees and charges are used entirely for Salt and Light’s charitable purposes. The statute does not specify a maximum allowable level of support from fees or charges by or on behalf of beneficiaries. The only statutory requirement is that this form of support be partial. Thus, Salt and Light’s charitable purpose cannot be questioned on the sole basis that two-thirds of its residents are government supported and two-thirds of its revenues derive from a combination of tenant rental payments and government agencies on a fee-for-service basis. The rents are below market, and the fee-for-service revenue is only partial. The other one-third of Salt and Light’s revenues derives from a combination of government and private grants (30%) and charitable contributions (3-4%).
Case law confirms this reading of the statute, at least as to payments received from the beneficiaries themselves or from other nongovernmental sources.
In Paterson Rescue Mission v. High, 64 N.J.L. 116, 44 A. 974 (Sup.Ct.1899), the former Supreme Court held that the property *287 of an organization that operated a home for elderly, disabled men and for crippled and mentally deficient persons was exempt from taxation despite the fact that revenue from the sale of kindling was the home’s principal source of support. Id. at 117-19,123, 44 A. 974. The home purchased wood, and the residents, to the extent they were physically able, chopped the wood into kindling and sold it in the city. Id. at 118-19, 44 A 974. The court rejected the city’s argument that the property should not be exempt because the home was supported in large part by the profits derived from the efforts of the beneficiaries, stating, “Where the objects and purposes of the institution are wholly charitable, with no element of private gain, receipt of compensation from those who enjoy the benefits does not affect its charitable nature.” Id. at 120, 44 A. 974. To similar effect are Asbury Park v. Salvation Army, 26 N.J. Misc. 170, 58 A.2d 216 (Div. of Tax App.1948) (home for retired Salvation Army ministers held exempt despite receipt of fees from residents) and Denville Tp. v. St. Francis Sanitarium, 89 N.J.L. 293, 98 A. 254 (E. & A. 1916) (receipt of fees from beneficiaries in partial support of sanitarium operated by religious order did not prevent local tax exemption for property of otherwise religious and charitable organization).
More recently, the Appellate Division concluded in Catholic Charities of the Diocese of Camden v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.), certif. denied, 56 N.J. 474, 267 A.2d 56 (1970), that a nursing home that sought to admit “the economically disadvantaged and those receiving public assistance or welfare, and especially those who [were] ill” qualified for tax exemption. Id. at 480, 483, 263 A.2d 803. Of the 106 nursing home patients, 80 were on welfare and paid less than the $90 per week charged to private pay patients. Id. at 479, 263 A.2d 803. At $90 per week, the rates of the home were substantially less than those charged by a proprietary institution in Atlantic City. Id. at 479-80, 263 A.2d 803. The Division of Tax Appeals had granted the exemption, reasoning that the home served a community need by admitting those not sought by profit making nursing homes. Id. at 481, 263 A.2d 803. The Appellate Division agreed and affirmed the exemption. Id. at 483, 263 A.2d 803.
*288 Although there is no discussion in Catholic Charities of the government subsidy presumably provided to the patients receiving public assistance or welfare, the case suggests that a truly charitable use is not necessarily vitiated by the receipt of government support on behalf of beneficiaries of the institution.
Mount Holly, however, quite correctly focuses on the statement in Presbyterian Homes that “a sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be undertaken at public expense.” 55 N.J. at 285, 261 A.2d 143. Since Salt and Light is largely supported by the government, how, asks Mount Holly, can the company be relieving government of a public expense?
In support of its argument, Mount Holly relies principally on the Appellate Division’s decision in Parker v. St. Stephen’s Urban Development Corp., 243 N.J.Super. 317, 579 A.2d 360 (App.Div.1990) and the Tax Court’s decision in Weymouth Tp. v. Memorial Park Family Practice Ctr. Inc., 7 N.J.Tax 589 (Tax 1985).
Parker involved, not a local property tax exemption, but the Charitable Immunity Act. NJSA 2A:53A-7 to -11. The question was whether a nonprofit housing corporation qualified as a charity under the act. The corporation was formed to assist low and moderate income persons in obtaining housing by, among other things, qualifying for HUD mortgage interest reduction payments and mortgage insurance. Parker, supra, 243 N.J.Super. at 319-20, 579 A.2d 360. The corporation’s apartment complex qualified for HUD rental subsidies. Id. At 320, 579 A.2d 360. Under the subsidy program, if a tenant’s rental payment was insufficient to meet the prorated operating expense for a particular unit, HUD made up the difference. Id. at 321, 579 A.2d 360. Approximately 60% of the tenants received HUD rent subsidies. Ibid. The remaining tenants paid rent up to a predetermined market level. Ibid. The issue of the entity’s charitable immunity arose when a tenant tripped and fell on a sidewalk in the complex and sued the corporation for medical expenses. Ibid. The corporation claimed *289 that it had no liability in tort under the Charitable Immunity Act, Id. at 324, 579 A.2d 360.
The Appellate Division concluded that the corporation was not a charity within the meaning of the act because it was simply a “conduit for federal mortgage money and for federal rent subsidies.” Id. at 325, 579 A.2d 360. The court continued that, “[t]ogether with tenant rent payments, these two federal programs are intended to pay all of the costs of Stephen Manor so that it will ‘break even.’” Ibid. Citing Presbyterian Homes, supra, 55 N.J. at 285, 261 A.2d 143, the court reasoned that, “by the very nature of its operation, defendant contravenes one of the footings of charitable status — undertaking acts by which the government is relieved pro tanto from a burden it would otherwise have to perform____ Defendant was not created to lessen the burden on government but to obtain as much funding from the government as possible and to operate the project exclusively with that funding.” Id. at 326, 261 A.2d 143. The court noted that of equal importance was the absence of fund raising activities and charitable contributions. Ibid. According to the court, the essence of the charitable immunity doctrine is the “preservation of private charitable contributions for their designated purposes.” Ibid.
The Tax Court in Weymouth Tp., supra, employed a similar analysis in denying tax exemption to the property of a medical facility that received a substantial portion of its funding from the federal government under the rural health initiative program. Id. at 599. The center provided medical services of various kinds and physician care and health education services at local schools. Id. at 598, 602. The center charged for its services on a reduced fee basis and in return received federal funding. Id. at 600. The court held that the center did not qualify as a charity because approximately half of its support derived from federal funding, and the revenue derived from persons paying less then market rates was a small fraction of the federal monies received. In fact, only 9% of the individuals served paid on a sliding scale at below market rates. Id. at 607-08. Most of the other patients either *290 had insurance coverage, Medicare, or Medicaid. Id. at 607. Citing Presbyterian Homes, the court concluded that “the alleged charitable work is being paid for by the federal government. Accordingly, the justification for tax exemption does not exist.” Id. at 608.
Despite the holdings in Parker, supra, and Weymouth Tp., supra, the facts and circumstances of this case lead me to the conclusion that the properties of Salt and Light Company are exempt from local property taxation.
As previously stated, providing housing and services to the impoverished homeless is undoubtedly a core charitable purpose, and the statute itself makes clear that the receipt of fees on behalf of the charitable beneficiaries does not destroy an otherwise charitable purpose. In its decision modifying the Tax Court’s decision in Church Contribution Trust v. Mendham Bor., supra, the Appellate Division made clear that the mere billing of clients for services provided does not in and of itself disqualify a purportedly charitable use. Rather, entitlement to exemption depends upon “the circumstances, charges and public betterment.” 224 N.J.Super. at 646, 541 A.2d 249.
There is no dispute about the “public betterment” produced by Salt and Light’s activities, and in my opinion the “circumstances” and “charges” justify tax exemption. While it is true that government provides substantial support for Salt and Light’s endeavors, the company is not simply a conduit for government subsidies. The testimony at trial established that Salt and Light receives $36 per day per single adult; a traditional homeless shelter in Burlington County receives $52 per day per single adult. Salt and Light is thus lessening the financial burden on government. Although for-profit motels and hotels may provide housing for the homeless at $35-$40 per day, these entities provide no services, no counseling, and in many instances no cooking facilities. In contrast, Salt and Light’s activities extend beyond housing to the teaching of basic living skills, e.g. cleaning and cooking, and Salt and Light’s staff provides counseling in an effort to solve the problems that *291 created a state of homelessness for a particular individual. Thus, Salt and Light provides a unique combination of housing and counseling at a lower per individual per day cost than would otherwise be the case. Thus government benefits from Salt and Light’s program albeit government is not totally relieved from the financial burden of caring for the homeless.
Moreover, it is clear that approximately one-third of Salt and Light’s residents are individuals who do not qualify for government aid to the homeless. These individuals pay what they can toward their rent, but the testimony at trial was clear that none of them paid market rents, a few paid nothing at all, and no one was evicted for inability to. pay. Apparently, Salt and Light makes up this short fall from foundation and government grants and a minimal amount of charitable contributions. When all of Salt and Light’s various sources of support are included, the company’s average daily cost to support a homeless individual is not $36 but $19. It is thus clear that Salt and Light relieves government of a portion of the public expense that would otherwise be incurred in government supported housing for the homeless.
Parker v. St. Stephen’s Urban Development Corp., supra, is distinguishable due to the different purposes of the Charitable Immunity Act and the charitable exemption provision in the local property tax. As made clear in Parker, the underlying rationale for the Charitable Immunity Act is to prevent the dissipation of private charitable contributions in the payment of litigation damages. To the extent that an entity receives no private contributions, as was the case with St. Stephens, the justification for immunity is lacking. The charitable exemption provision in N.J.S.A. 54:4-3.6 is not limited to entities receiving private donations. In fact the statute itself contemplates the receipt of funds from other than charitable contributions. As long as the use is otherwise charitable, e.g., providing housing and various services to the homeless poor, it should not matter whether funding is supplied in part by the beneficiaries as in Asbury Park v. Salvation Army, supra, by the sale of goods as in Paterson Rescue Mission, supra, or from government sources, so *292 long as the charitable entity to some extent relieves a burden on government. Where, as here, the entity provides a charitable service that government itself would otherwise have to provide, provides that service at a lower cost, and serves a number of individuals who are not supported by government subsidies, government is relieved of a burden, and the charitable exemption should apply. See Yorgason v. County Board of Equalization, 714 P.2d 653 (Utah 1986) (housing for needy elderly and handicapped individuals qualified for charitable tax exemption despite receipt of HUD rent subsidies because housing nevertheless lessened government’s financial burden; so long as charges to beneficiaries were less than value of benefits received, it was immaterial whether subsidy derived from government or private donors). See contra, Supervisor of Assessments v. Har Sinai West Corp., 95 Md.App. 631, 622 A.2d 786 (Md.Ct.Spec.App.1993) (subsidized housing for needy elderly and handicapped individuals did not qualify for charitable tax exemption; Maryland case law required a qualifying charity to be supported by donations; government rent subsidies were not donations).[4]
Mount Holly argues that Salt and Light competes with for-profit housing providers that do not have the benefit of tax exemption. The argument is misplaced. For-profit hotels and motels may accept government subsidized homeless persons, but they do not, at least in so far as the record in this case establishes, accept individuals who fail to qualify for government support and they do not continue to house individuals who lose their government subsidy. Salt and Light does both, in return receiving either rental payments that are below market or in some eases no rent at all. Moreover, the services offered by Salt and Light *293 extend beyond providing shelter to counseling and teaching basic living skills, services that are not provided by for-profit housing providers. Finally, the state regulations authorizing emergency shelter/housing payments contemplate the involvement of nonprofit organizations such as Salt and Light in state-approved county programs. One of the goals of such programs is to “reduc[e] the use of motels/hotels for emergency placements [and to] facilitate a more humane response to [emergency assistance] families in need of support services beyond simply shelter/housing requirements.” N.J.A.C. 10:82-5.10(f)6. To the extent that Salt and Light “competes” with for-profit hotels and motels, it does so because the State and county have determined that it should in order to achieve “a more humane response” to the needs of homeless families. This is plainly not competition in the ordinary sense of the word, but rather the State’s selection of a preferred provider of temporary housing and aid to the homeless. See Franklin v. Dept. of Human Services, supra, 111 N.J. at 19, 543 A.2d 1 (recognizing that “the spectacle of housing a family in a hotel room offends even the most callous of us.”)
The fact that Salt and Light provides its services free of charge if necessary and provides more extensive services than for-profit housing providers distinguishes this case from Weymouth Tp. v. Memorial Park Family Practice Ctr. Inc., supra. The Tax Court there found that the applicant for tax exemption was in direct competition with other doctors and medical facilities. Weymouth Tp., supra, 7 N.J.Tax at 608. In fact, the federal legislative history of the community health center program, which funded the center, specified that one of the aspects of the program was “ ‘the development of these activities as effective and efficient entities competitive with private providers.’” Id. at 609 (quoting 1978 U.S.Code Cong. & Admin.News 9134, 9144.) There is no evidence that private providers compete with Salt and Light to house the homeless who are not eligible for government support and no evidence that private providers offer the kinds of services that are part and parcel of Salt and Light’s program.
*294 Similar reasoning distinguishes the other cases cited by Mount Holly. The musing home in Woods Court v. Woodstown Bor., 12 N.J.Tax 197 (Tax 1992), accepted only patients who were able to pay the home’s rates, and there was no proof that these rates were less than those charged by for-profit nursing homes in the area. Id. at 209, 210. The low and moderate income housing corporation in St. Duke’s Village, Inc. v. Peapack & Gladstone Bor., 11 N.J. Tax 76 (Tax 1990), required residents unable to pay the monthly rental to leave. Id. at 80.
The remaining issue is whether Salt and Light’s financial status prevents its properties from being tax exempt. As previously indicated, Salt and Light had revenues in 1994 of approximately $1 million and excess revenues over expenses at the end of that year of approximately $200,000. In addition, the company’s cash balance increased by approximately $22,000 from $19,000 to $41,000 during the 1994 fiscal year.
N.J.S.A 54:4-3.6 requires that an entity claiming exemption not be conducted for profit and that the property for which exemption is claimed not be operated for profit. The receipt of a profit and an increase in cash balances for a single year may be indicative of a profit making purpose, but they are not conclusive. The question is whether Salt and Light itself or its properties are being operated for profit. Paper Mill Playhouse v. Millbum Tp., 95 N.J. 503, 520-22, 472 A.2d 517 (1984); Catholic Charities, supra, 109 N.J.Super. at 483, 263 A.2d 803; Jersey Shore Medical Center v. Neptune Tp., 14 N.J. Tax 49, 63 (Tax 1994). There is nothing in the record, other than the profit and loss figures just mentioned, to suggest that Salt and Light or its properties are operated for profit. Salt and Light expends its monies for program services for the homeless, acquisition and renovation of properties to house the homeless, and debt service. It pays reasonable salaries to its staff. No distributions are made to private individuals. There is no evidence to suggest that the net income or increase in cash balances was used for any purpose other than to provide housing and services to the homeless. See Paper Mill Playhouse, supra, 95 N.J. at 522, 472 A.2d 517. In *295 the words of the Appellate Division in Trenton v. New Jersey Division of Tax Appeals, 65 N.J.Super. 1, 166 A.2d 777 (App.Div. 1960), in a case involving tax exemption for an educational institution: [5]
We perceive nothing in the statute requiring, as a condition of tax exemption, that a non-profit educational institution must actually operate at a loss, or that it must gear its tuition rates and other receipts so as to avoid an excess of income over current expenditures. To hold that a college may not accumulate a surplus, even though accomplished in some measure by the generosity of donors, without losing tax-exempt status, would be tantamount to declaring that such institutions may not plan on a sound fiscal basis for the replacement of antiquated facilities or the expansion of facilities almost all colleges are finding necessary to accommodate the ever-mounting demands for a college education. The tax statute imposes no such sanction.
[Id. at 10,166 A.2d 777]
As there is no proof that Salt and Light’s operations are commercial in nature, its receipt of revenues in excess of expenses and an increase in its cash balances for a single fiscal year do not establish that the company and its properties are operated for profit. Cf. City of Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 535, 351 A.2d 756 (App.Div.1976), aff'd per curiam, 73 N.J. 179, 373 A.2d 651 (1977).
In summary, the seven properties at issue qualify for local property tax exemption. The properties are used for charitable purposes, and the receipt of government support on a fee-for-serviee basis does not vitiate the charitable use under the facts of this case. Those facts include the extension of Salt and Light’s services to homeless individuals who do not qualify for government aid and who pay Salt and Light below market rents or no rent at all for housing in Salt and Light’s properties, Salt and Light’s policy of not evicting residents who are unable to pay, and Salt and Light’s provision of services to the homeless that the private for-profit housing market does not provide. Salt and Light is not conducted for profit nor are its buildings operated for *296 profit even though its 1994 financial statements reveal an excess of revenue over expenses and an increase in cash flow.
Judgments will be entered affirming the county board of taxation’s judgments with respect to the 1994 tax year, (the year for which the board continued Salt and Light’s exemptions) but reversing the board with respect to the 1995 tax year (the year for which the revocations of exemption went into effect).

The blocks and lots are as follows: block 12.04, lot 87; block 12.05, lot 20; block 12.05, lot 57; block 51, lot 35; block 41.01, lot 36; block 58, lot 16, and block 81, lot 9. The assessments range from a low of $22,400 to a high of $155,800.

 Clearly, there was no change in use or ownership justifying a pro rata assessment for 1994 pursuant to N.J.S.A. 54:4-63.26. See 18 Washington Place Assocs. v. Newark, 8 N.J.Tax 608, 612 (Tax 1986). Moreover, the omitted property procedures cannot be used when property is included on the tax list, but at an erroneous value. See Glen Pointe Assocs. v. Teaneck Tp., 10 N.J.Tax 598, 601 (Tax 1989), aff'd. per curiam, 12 N.J.Tax 127 (App.Div.1991). Salt and Light’s properties were not left off the 1994 tax list; instead they were included at an erroneous, i.e„ zero, value. On the other hand, there is authority supporting an omitted assessment where the assessor discovers that exempt property should not have been granted tax exemption because it was not used for exempt purposes on the applicable assessing dates. Camden City v. Camden Masonic Ass'n, 9 N.J.Tax 331, 339 (Tax 1987), aff'd per curiam, 11 N.J.Tax 88 (App.Div.1989).

 Families receiving this type of temporary housing aid are generally placed in hotels, motels, or shelters. NJ.A.C. 10:82-5.10(1). The regulations authorize payments for up to twelve months for temporary rental assistance in more permanent housing. Ibid. In Franklin v. New Jersey Dept. of Human Services, 111 N.J. 1, 543 A.2d 1 (1988), the Court upheld the department’s five-month limitation on temporary shelter assistance.

 The Maryland court in Supervisor of Assessments, supra, notes that the differing results in charitable exemption cases involving subsidized housing for the poor can be traced to whether the particular statute or applicable case law requires merely that the charity use its property exclusively for charitable purposes or imposes the additional requirement that the charity be supported by charitable donations. New Jersey falls in the former category. N.J.S.A. 54:4-3.6 focuses on exclusive use and specifically permits partial support from fees or charges received by or on behalf of charitable beneficiaries.

 The requirement that an entity and its properties not be operated for profit applies to the various exemptions set forth in N.J.S.A. 54:4-3.6, including charitable and educational organizations.