HAMILL, J.T.C.
In this local property tax matter, plaintiff 1711 Third Avenue, Inc. seeks exemption from tax under N.J.S.A. 54:4-3.6. Plaintiff claims that its property located at 1711 Third Avenue in Asbury Park at Block 24.01, Lot 13 qualifies for exemption as an entity organized exclusively for the moral and mental improvement of men, women and children, or as an institution that cares for, treats, and studies the “feebleminded, mentally retarded, or idiotic men, women, or children . . . .” N.J.S.A 54:4-3.6. The Monmouth County Board of Taxation denied the exemption and affirmed the assessment at $98,000.
Plaintiff produced two witnesses at trial. The first was Pamela McCrory, director of community support programs for Collaborative Support Programs of New Jersey, known as CSP. As explained below, under the United States Department of Housing and Urban Development (“H.U.D.”) regulations, CSP is the sponsoring organization for plaintiff. In addition, Ms. McCrory is the director of housing for Butterfly Property Management Company (“Butterfly”), which manages the residential properties sponsored by CSP. Plaintiffs other witness was Kathleen Mahon, a property manager employed by Butterfly. The following facts were developed at trial.
The property in question consists of a house having three bedrooms, kitchen, living and dining rooms, two bathrooms, and a basement. It is a property funded in large part by a program of H.U.D. known as section 811 supportive housing. The purpose of the H.U.D. program is to provide permanent housing and support services to low income adults with mental problems. Under H.U.D. regulations, the tenants, now numbering two, must pay 30% of their income as rent to 1711 Third Avenue. Currently, this *178 amounts to rental payments of $110 per month for one tenant and $115 for the other. Neither tenant has a job; their income derives from social security payments. The tenants share the common areas of the house.
Under H.U.D. regulations pertaining to section 811 housing, each supported residence must be separately incorporated as a nonprofit corporation to own the property. Plaintiff 1711 Third Avenue, Inc. fulfills this purpose. Plaintiff has no employees of its own. All services necessary to operate the supportive housing program are provided under H.U.D. regulations by a nonprofit sponsoring organization. In the ease of 1711 Third Avenue, the sponsoring organization is CSP.
CSP, through a staff of two social workers, a director of community support programs, and additional back-up personnel, provides counseling and other services needed by the residents at the subject property and at 34 other supported residences throughout the State. These services include on-site and off-site counseling. The on-site counseling was irregular during 1995, but currently occurs at least one hour per week, per resident. Counseling and assistance include assistance with budgeting, shopping, cooking, cleaning, personal hygiene, attendance at doctors’ appointments, monitoring of medical prescriptions, case management, making or re-establishing ties with the community, accessing mental health services in the community, and, when necessary, intensive crisis management including extensive on-site visits and twenty-four hour staff availability.
To manage the properties it sponsors, including 1711 Third Avenue, CSP contracts with another nonprofit corporation, Butterfly Property Management. Butterfly drafts leases with tenants, collects rents, and handles repairs and utility bills. 1711 Third Avenue pays Butterfly seven percent of the rents collected from the tenants as a management fee.
Under the H.U.D. section 811 program, H.U.D. provided CSP with the funding to purchase the property. H.U.D. approved CSP as a sponsoring organization, and CSP must account to H.U.D. for *179 the operation of 1711 Third Avenue. This includes certifying to H.U.D. that the tenants are mentally ill.
Asbury Park’s counsel objected to the testimony of plaintiffs two witnesses concerning the mental illnesses of the tenants, pointing out that the property manager was not qualified to diagnose mental illness and had only been told by others that the individuals have psychiatric problems. While the director of community support programs has the education and experience sufficient to permit her to diagnose mental illness, her work with CSP does not entail those duties, she herself had not diagnosed the two individuals, and, like the property manager, had simply been advised by the social workers (whom she did not supervise) that the individuals had various psychiatric illnesses. I agree with defendant that plaintiffs witnesses were not competent to testify as to the psychiatric condition of the tenants. On the other hand, there is sufficient other evidence in the record to establish that the residents are mentally ill.
It is undisputed that the property in question is part of H.U.D.’s section 811 supportive housing program. Section 811 refers to a section in the Cranston-Gonzalez National Affordable Housing Act. 42 U.S.C.A. § 8013 (1994). The purpose of section 811 “is to enable persons with disabilities to live with dignity and independence in their communities by expanding the supply of supportive housing . . . .” 42 U.S.C.A. § 8013(a). A “person with disabilities” is an individual having long-term physical, mental, or emotional impairment that impedes the person’s ability to live independently and who could benefit from “more suitable housing conditions.” 42 U.S.C.A. § 8013(k)(2). Persons with chronic mental illness are considered disabled under the Act. Section 811 Supportive Housing for Persons with Disabilities, Definitions, 24 C.F.R. § 891.305 (1996). Quite clearly, the subject property could not qualify under section 811 unless it housed persons with the described disabilities, and chronic mental illness is a specifically included type of disability.
*180 The fact that one of the tenants is well enough to drive a car, maintain a checking account, and hold a volunteer job does not necessarily lead to the conclusion that the individual is not mentally ill. As explained by the director of community support programs, the individuals are well enough at times to perform these functions but nevertheless suffer from serious mental illnesses. The design of the section 811 program is to have these individuals live in normal, residential, low cost housing to the extent they are able. Moreover, both the property manager and director of community support programs had fairly frequent contact in person and by telephone with the tenants and, based on their personal observations as lay persons, were in a position to at least know if the individuals acted normally. Based on the competent testimony at trial and the applicable law, it is clear that the tenants are mentally ill.
To qualify for tax exemption under N.J.S.A. 54:4-3.6 as a property used for the moral and mental improvement of men, women and children, a property must generally meet four criteria:
1. The entity owning the property must be organized exclusively for the moral and mental improvement of men, women and children;
2. The properly must be used in the work of the entity organized for moral and mental improvement;
3. Neither the owning entity nor the property may be operated for profit; and
4. The entity claiming the exemption must own the property and be “authorized to carry out the purposes on account of which the exemption is claimed . . . .”
Whether the first requirement is met is to be determined by the statement of purposes in the owning entity’s certificate of incorporation. See Planned Parenthood of Bergen County, Inc. v. Hackensack City, 12 N.J.Tax 598, 610 n. 6 (Tax 1992), aff'd, 14 N.J.Tax 171 (App.Div.1993) (holding that the word “ ‘organized’ in the statute refers to the entity’s organizational documents, its corporate charter”). See also Intercare Health Sys., Inc. v. Cedar Grove Tp., 12 N.J.Tax 273, 275 (App.Div.1991), certif. denied, 127 N.J. 558, 606 A.2d 369 (1992) (relying on corporate charter to determine whether claimant met organizational test); Salt and Light Co., Inc. v. Mt. Holly Tp., 15 N.J.Tax 274, 280 (Tax 1995), aff'd, 16 N.J.Tax 40 (App.Div.1996) (same); Jersey Shore Med. *181 Ctr. v. Neptune Tp., 14 N.J.Tax 49, 55-56 (Tax 1994) (same). I do not agree with the conclusion reached by the Tax Court in Intercare Health Sys., Inc. v. Cedar Grove Tp., 11 N.J.Tax 423, 430-31 (1990), aff'd, 12 N.J.Tax 273 (App.Div.1991), that to determine whether a claimant is organized for an exempt purpose, its operations are to be reviewed. The purposes for which an entity is organized and an entity’s operations are plainly distinct. There is no entity-level operational test in the hospital, charitable, or moral and mental improvement exemptions. Instead, the statute requires that the building in question be operated for the particular exempt purpose.
The purposes clause in plaintiffs certificate of incorporation provides in its entirety as follows:
(a) This Corporation is organized exclusively for charitable and/or educational purposes, including, for such purposes, the making of distributions to organizations which qualify as exempt organizations under Section 501(c) of the Internal Revenue Code of 1986, as amended, or the corresponding section of any future United States Internal Revenue Law, or to the Secretary of Housing and Urban Development for the time being exclusively for a public purpose, in pursuance of the foregoing purposes, the Corporation shall have the power to provide consumers of mental health services with housing facilities and services specially designed to meet their physical, social, and psychological needs, and to promote their health, security, happiness and usefulness in longer living, the charges for such facilities and services to be predicated upon the provision, maintenance, and operation thereof on a nonprofit basis.
The purposes for which plaintiff is organized are “charitable and/or educational.” The provision of housing facilities designed to meet the “physical, social, and psychological needs” of consumers of mental health services might qualify plaintiff as being organized for the moral and mental improvement of men, women and children. See Schizophrenia Found, of N.J. v. Montgomery Tp., 6 N.J.Tax 594, 598, 601 (Tax 1984) (concluding that claimant was organized for moral and mental improvement of men, women and children where one of its stated purposes was “to assist the schizophrenic patient to rehabilitate and readjust to society”). Such a conclusion is not possible here because providing housing to consumers of mental health services is not one of plaintiffs purposes. As shown by the introductory clause “in pursuance of the foregoing purposes,” providing such housing is *182 the means of accomplishing plaintiffs charitable or educational purposes. If I were to conclude otherwise, I would also have to conclude that “the making of distributions to organizations which qualify as exempt organizations under Section 501(c) of the Internal Revenue Code of 1986” was also a corporate purpose. In that case plaintiff would likely fail the organizational test because making distributions to an entity exempt from federal income tax is not one of the enumerated exempt purposes in N.J.S.A 54:4-3.6, and the organizational test requires that an entity be organized exclusively for one or more of the enumerated purposes set forth in N.J.S.A. 54:4-3.6. Jersey Shore Med. Ctr., v. Neptune Tp., supra, 14 N.J.Tax at 56-58.
The same argument might be made in respect of the alternative educational purpose set forth in plaintiffs certificate. There is no general exemption in N.J.S.A. 54:4-3.6 for entities organized for educational purposes. See Secondary Sch. Admissions Test Bd., Inc. v. Princeton Bor., 13 N.J.Tax 467, 473-77 (Tax 1993) (holding entity whose purpose was to provide standardized tests to be used in secondary schools’ admission process was not exempt as school, college, academy or seminary, and entity could not qualify on ground its purpose was to further educational purposes of member schools). The exemptions in the statute involving educational institutions are for “buildings actually used for colleges, schools, academies or seminaries” and arguably for institutions that, inter alia, study “feebleminded, mentally retarded, or idiotic men, women, or children.” N.J.S.A. 54:4-3.6. Giving plaintiff the benefit of the doubt, I conclude that since the educational purpose is only an alternative to plaintiffs charitable purpose, plaintiff does not fail the organizational test on that score.
In short, plaintiff is organized for charitable purposes and not for the moral and mental improvement of men, women and children. It is possible that plaintiff could establish that the property in question is actually and exclusively used to carry out a charitable purpose. N.J.S.A. 54:4-3.6; see generally Salt and Light, supra, 15 N.J.Tax 274. However, plaintiff has not offered *183 the proper proofs nor made the necessary arguments to bring itself within the exemption for charitable institutions.
The above analysis is technical, focusing as it does on the language of plaintiffs certificate of incorporation when plaintiffs activities as a whole may suggest an exempt use. But the analysis is entirely consistent with the general approach to local property tax exemptions. “Statutes granting exemption from taxation represent a departure and consequently they are construed most strongly against those claiming exemption.” Pingry Corp. v. Hillside Tp., 86 N.J.Super. 437, 448, 207 A.2d 194 (App.Div.1965), rev’d on other grounds, 46 N.J. 457, 217 A.2d 868 (1966), quoting Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420 (1961). “[T]he burden of proving a tax-exempt status is upon the claimant. The party seeking an exemption has the burden of bringing itself clearly within the exempting statute . . . .” Pingry, supra, 86 N.J.Super. at 448, 207 A.2d 194. (citations omitted). By failing to fit its stated corporate purposes within the exempt purposes set forth at N.J.S.A. 54:4-3.6, plaintiff has not brought itself clearly within the exempting statute.
Plaintiff has also failed to prove that its certificate of incorporation qualifies it for the exemption for “property owned and used by any nonprofit corporation in connection with its curriculum, work, care, treatment and study of feebleminded, mentally retarded, or idiotic men, women, or children . . . .” N.J.S.A. 54:4-3.6. As defendant points out, plaintiff cannot qualify for the “feebleminded exemption” in any event because that exemption requires that the property be used in the “curriculum, work, care, treatment” etc. of the entity claiming the exemption. It is undisputed that plaintiff itself has no curriculum of its own and carries out no work, care, or treatment. Plaintiff simply holds title to the real estate. CSP provides all programmatic services. Plaintiffs factual presentation and legal argument fail to bring it within the exempting statute.
In sum, plaintiffs property is not exempt from local property tax because plaintiff is not organized for the moral and mental *184 improvement of men, women, and children or for the care, etc., of the feebleminded, and plaintiff has failed to prove that the property is used for charitable purposes.
Plaintiff’s property is not exempt for another reason. All the exemptions in N.J.S.A. 54:4-3.6 require that neither the claimant nor the property for which exemption is claimed be operated for profit. Plaintiff makes no attempt to establish this point. At trial, Ms. MeCrory asserted that plaintiff operated at a deficit. That was the extent of the testimony on this point. Plaintiff produced no financial statements to corroborate Ms. McCrory’s testimony.
The fact that an entity may operate at a profit or loss does not establish that either the entity or the building is “not conducted for profit.” N.J.S.A. 54:4-3.6; Salt and Light, supra, 15 N.J.Tax at 294-95; Jersey Shore Med. Ctr., supra, 14 N.J.Tax at 62. The question is whether plaintiff’s property is operated for charitable purposes or to make a profit. Jersey Shore Med. Ctr. supra, 14 N.J.Tax at 62-63. As suggested by defendant, evidence bearing on whether plaintiff or the property were operated for profit would include plaintiff’s and CSP’s financial statements for a period of years, a detailed explanation of the use of plaintiffs and CSP’s revenues including amounts paid as salaries, and proof that plaintiff charges below market rents. Other significant financial information would include a complete explanation of the financial arrangements between plaintiff and CSP and a breakdown of the sources of plaintiffs and CSP’s revenues in order to ensure that plaintiff is not simply a conduit for government funding of the mentally ill. Cf. Salt and Light, supra, 15 N.J.Tax at 288-92 (examining circumstances in which entities incur little to none of the costs in providing its services, instead relying on government subsidies to support its operations). Evidence establishing whether plaintiff competes with for-profit entities providing housing for the mentally ill and whether plaintiff evicts tenants who lose their social security and are unable to pay rent would also be significant. Id. at 292-94.
*185 Again, plaintiff has failed to bring itself squarely within the exemption by failing to produce any financial data to establish that neither plaintiff itself, nor the building in question, were operated for profit. Without such proof in the record, I can only conclude that the subject property is not exempt from local property tax. The court will therefore enter a judgment affirming the county board and dismissing the complaint.