851 A.2d 792 (2004)
371 N.J. Super. 1
DISABILITIES RESOURCE CENTER/ATLANTIC AND CAPE MAY, INC., a New Jersey Corporation, Plaintiff-Respondent,
v.
CITY OF SOMERS POINT, a Municipal Corporation of the State of New Jersey, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 2004.
Decided July 8, 2004.
*793 Youngblood Corcoran Lafferty Hyberg & Waldman, Pleasantville, attorneys for appellant (Thomas G. Smith, on the brief).
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys for respondent (Jeffrey D. Light, Linwood, on the brief).
Before Judges NEWMAN, FALL and HOENS.
The opinion of the court was delivered by HOENS, J.A.D.
Defendant City of Somers Point appeals from the decision of the Tax Court determining that property owned by plaintiff Disabilities Resource Center/Atlantic and Cape May, Inc. is exempt from property taxes pursuant to N.J.S.A. 54:4-3.6. We affirm.
The facts which gave rise to the dispute and to the decision of the Tax Court are as follows. Plaintiff is a nonprofit organization that provides vocational, respite, family support and residential services to *794 people with mental retardation and other disabilities. As a part of its work, plaintiff owns and operates residential, community-based group homes where individuals with the disabilities it serves live in structured, supervised settings. Significant to this appeal, plaintiff owns a ranch style house located on a parcel of property in Somers Point which plaintiff is utilizing as a group home. The home has three bedrooms, one and one-half bathrooms, a kitchen, a dining room, a living room, a room referred to by plaintiff as the training room, and a Florida room. The training room is generally used for purposes of training the staff members, but is also used for working with the disabled individuals who live in the home. The home does not have a formal classroom and does not include a formal research facility. Plaintiff does not operate any professional training facilities separate from the group homes.
The day-to-day operation of the home is overseen by Betty Spence, a college-educated employee of plaintiff, who serves as the Residential Supervisor and Training Coordinator. Her duties include training the staff members in crisis management, health and safety, first aid and CPR, all of which is performed on-site. In addition to Ms. Spence, eight other full-time employees and one part-time employee work at the group home. Each of these employees is a high school graduate who has also completed additional training in a variety of subjects including administration of medications, crisis management, health and safety instruction, empowerment and stress training, appropriate documentation of medication administration, reporting and preventing abuse and neglect, first aid and CPR. One of the employees has also been certified by the Board of Nursing as a homemaker/health aide.
Among the services provided to the residents at plaintiff's facility are training in basic life skills development, arts and crafts, and, to the extent possible, assistance with individual financial and budget management. These services vary among the specific individuals who reside in the group home in accordance with each resident's Individual Habilitation Plan (IHP). The IHP for each resident includes specific goals and objectives developed jointly by plaintiff's staff, the resident, the resident's family members, and representatives of the State of New Jersey. The progress of each resident is monitored and the IHP is modified as needed. The residents, all of whom were institutionalized at some point prior to their move into plaintiff's facility, all of whom were described as being "low functioning," and most of whom are largely non-verbal, receive services during the daytime in the nature of work-like programs in sheltered workshops operated by other agencies.
All of the funding for the operation of the group home is provided through the State of New Jersey, Department of Human Resources, Division of Developmental Disabilities. Plaintiff obtained all of the required licenses from the State in connection with its operation of the proposed group home and is subject to on-going oversight by the State. Plaintiff began to serve individuals in the Somers Point facility in 1999.
In October 1999, plaintiff filed an application with the Tax Assessor of the City of Somers Point seeking a tax exemption for the subject property in accordance with the procedures set forth in N.J.S.A. 54:4-4.4. On December27, 1999, the City Tax Assessor notified plaintiff that the request for an exemption had been denied. Plaintiff then filed an appeal with the Atlantic County Board of Taxation. Based on plaintiff's request that the Board affirm the City's assessment without prejudice in order to permit the parties to proceed in *795 the Tax Court, the Board issued its judgment on June 30, 2000, affirming the assessment and the determination that the property was not exempt. Plaintiff thereafter filed its complaint in the Tax Court, seeking an exemption for the property. Cross-motions for summary judgment were denied and the matter proceeded to a plenary hearing. Following that hearing, the Tax Court judge determined that the property was entitled to a tax exemption pursuant to N.J.S.A. 54:4-3.6.
Initially, three alternative grounds for tax exemption pursuant to the statute were asserted and considered. Two of them, namely the "moral and mental improvement" exemption and the "charitable" exemption, were rejected by the court prior to the plenary hearing for technical reasons not germane to this appeal. The plenary hearing proceeded based only on the so-called "feeble minded" exemption which was the sole focus of the Tax Court judge's decision. In short, the Tax Court judge reasoned that because the property was owned by a qualified nonprofit organization and was exclusively utilized for the purposes of training of the "feeble minded", it was entitled to a tax exemption.
On appeal, defendant argues that the Tax Court judge erred in two respects. First, defendant contends that the judge erred in determining that the evidence in the record demonstrated that the activities taking place in the group home qualify as "professional training" within the meaning of the statute. Second, defendant asserts that the judge erred in holding that plaintiff need not also demonstrate that the residents were being studied in order to qualify for the tax exemption. We disagree with both contentions.
It is well established that all real property within the jurisdiction of the State is presumed to be taxable, absent an exemption. See Weymouth Tp. v. Mem'l Park Family Practice Ctr., Inc., 7 N.J. Tax 589, 592 (Tax 1985). It is equally well established that the burden of proving that a tax exemption applies is on the claimant. See Presbyterian Homes of the Synod of New Jersey v. Division of Tax Appeals, 55 N.J. 275, 283, 261 A.2d 143 (1970). The issue before us, then, is whether the record demonstrates that this applicant has established that it is entitled to a tax exemption by virtue of its operation of a facility falling within the so-called "feeble minded" exemption as described in the statute relating more generally to tax exemptions for property of nonprofit organizations. See N.J.S.A. 54:4-3.6.
In relevant part, that statute provides as follows:
all property owned and used by any nonprofit corporation in connection with its curriculum, work, care, treatment and study of feeble minded, mentally retarded or idiotic men, women, or children shall also be exempt from taxation, provided that such corporation conducts and maintains research or professional training facilities for the care and training of feeble minded, mentally retarded, or idiotic men, women or children ...
[N.J.S.A. 54:4-3.6.]
This section of the exemption is but a small part of the statutory exemptions relating to property owned by nonprofit organizations. While the requirements relating to the exemption generally have been addressed elsewhere, see Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 512-13, 472 A.2d 517 (1984); Presbyterian Homes, supra; Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961), there appear to be only two published decisions that have considered the application of the so-called "feeble minded" exemption. In Mary's Manor, Inc. v. Galloway Tp., 12 N.J. Tax *796 189 (Tax 1991), the Tax Court described the statutory exemption as having four elements, which it explained as follows:
(a) All of the property for which the exemption is claimed must be owned and used by a nonprofit corporation.
(b) The property must be used in connection with its curriculum, work, care, treatment and study of feeble minded, mentally retarded or idiotic men, women or children.
(c) The corporation must conduct and maintain research or professional training facilities for the care and training for the above-enumerated type of persons.
(d) The buildings or lands on which they stand and the organization using and occupying them as aforesaid are not conducted for profit, except, where the benevolent work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings, the exemption "shall" be extended to those buildings "provided the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes."
[Id. at 195-96 (quoting N.J.S.A. 54:4-3.6).]
The defendant concedes that plaintiff here qualifies as a nonprofit corporation, within the meaning of subpart (a) of the test as described in Mary's Manor, and that the property is exclusively used as required in subpart (d) of that test. Defendant also concedes that in Mary's Manor, a group home operated in a similar manner to plaintiff's was found to meet all of the elements of the test for the "feeble minded" exemption. Defendant contends, however, that because the true focus of the dispute in Mary's Manor was not on the meaning of the "feeble minded" exemption, the court there did not, in fact, address the question squarely raised here.
In Mary's Manor, the dispute centered on evidence in the record that the operator of the residential facility received fees from its residents and had at times operated at a profit, which the township argued precluded it from demonstrating that it was truly a charitable or nonprofit entity. The Tax Court judge, after analyzing the relationship between profitability or fee generation and nonprofit status, determined that the fees and finances did not preclude the property from qualifying for exempt status as a charitable endeavor. He then concluded that the "feeble minded" exemption applied based on the use of the property for the care and training of mentally retarded persons. Id. at 196. As defendant correctly points out, however, the Tax Court judge in Mary's Manor was not asked, as we are, to more specifically interpret the provisions of the statute as it relates to the "feeble minded" exemption.
The only other published decision that refers to this exemption, see 1711 Third Ave., Inc. v. City of Asbury Park, 16 N.J. Tax 174 (Tax 1996), is no more enlightening. There, the Tax Court judge discussed the "feeble minded" exemption briefly, but did so only in the alternative. Id. at 183. The 1711 Third Avenue corporation had been created by a nonprofit organization as a separate entity. The separate entity, in turn, merely held title to real estate and rented apartments to disabled tenants. In fact, its corporate charter only allowed it to own the building. Id. at 181. As a result, absent from that record was any evidence that the corporate entity provided any care, training or treatment for the residents. Id. at 183. The proofs therefore fell so far short of demonstrating entitlement to an exemption under the "feeble minded" category that the application was rejected out of hand. Ibid.
*797 As defendant points out, the "feeble minded" exemption includes two phrases germane to our analysis. The first, referred to as part (b) of the test in Mary's Manor, refers to the use of property "in connection with its curriculum, work, care, treatment and study" of the individuals. The second, referred to as part (c) of the Mary's Manor test, is a limiting proviso, requiring that the corporate entity "conduct and maintain research or professional training facilities for the care and training" of these individuals. The precise meaning and relationship of these two phrases, however, because one uses the inclusive "and" while the other uses the disjunctive "or" forms the central issue before us. Defendant urges us to conclude that the use of the word "and" means that the particular property must perform all of the listed functions in order to qualify for the exemption. The Tax Court judge rejected that reading of the statute, as do we.
We first note that in reviewing Tax Court decisions on appeal, we generally defer to the expertise of the Tax Court in this "specialized and complex area." Reck v. Dir., Div. of Taxation, 345 N.J.Super. 443, 446, 785 A.2d 476 (App.Div.2001), aff'd, 175 N.J. 54, 811 A.2d 458 (2002); see Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 337, 478 A.2d 742 (1984). We therefore owe deference to the analysis of the Tax Court judge and to his decision rejecting defendant's reading of the statute. Our own reading of the interplay between the phrases, however, compels us to conclude that defendant's analysis is overly formalistic.
As our Supreme Court has instructed, "[w]ell-established principles of statutory construction direct us to look first to the statute's plain language to derive its meaning, absent any specific indication of legislative intent to the contrary." Town of Morristown v. Woman's Club of Morristown, 124 N.J. 605, 610, 592 A.2d 216 (1991) (citing Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987); Mortimer v. Board of Review, 99 N.J. 393, 398, 493 A.2d 1 (1985)). Moreover, to the extent that we strive to determine the legislative intent of any statute, "we [do] not only look to the language of the statute, but to the policy underlying the statute, concepts of reasonableness, and legislative history, if any." McQueen v. Brown, 342 N.J.Super. 120, 131, 775 A.2d 748 (App.Div.2001)(citing Coletti v. Union Cty. Bd. of Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App.Div. 1987)), aff'd on other grounds, 175 N.J. 200, 814 A.2d 1042 (2002).
Plainly, our analysis must begin with the limiting proviso and not with the general introductory phrase. Simply put, if the organization seeking exemption pursuant to this section cannot first prove that it "conducts and maintains research or professional training facilities for the care and training" of this population, then its exemption claim will fail.
It is clear from the record that plaintiff conducts and maintains a professional training facility within the meaning of this phrase. In fact, the very facility in issue qualifies for this purpose. It has a sizeable and well-trained staff dedicated to the care and training of the people who reside in the group home. It conducts on-site training for that staff in order to better enable them to serve the needs of the people in the home. While a significant portion of the training of the residents of the home is devoted to basic skills of daily living, for all of them and for most of the population that the statute describes as the "feeble minded," those are the skills that they most fundamentally need to learn. In fact, because each of these residents spends a portion of each weekday *798 at a program operated by another provider during which they learn employment-type skills, the focus on teaching them the more routine skills of daily living at plaintiff's facility is entirely appropriate. The testimony from Ms. Spence concerning the development and use of each resident's IHP to create individually tailored programs designed to address the particular needs of each of the individuals in the home is particularly notable in terms of our interpretation of the exemption statute. The evidence in this record is abundant that the activities of the plaintiff at the property are directed to care and training, by professionals and staff, of the residents of the home.
We reject, as well, defendant's suggestion that the record considered by the Tax Court in Mary's Manor implies that only a group home program in which most of the on-site personnel have advanced degrees in education can qualify for purposes of providing the type and level of professional training that the statute requires. While the particular staff members who are described in that decision in fact had advanced degrees, the record here demonstrates that all of the programs offered at plaintiff's residential facility were provided and overseen by personnel whose qualifications were sufficiently "professional" to fall within the parameters of the statutory exemption.
It is in this context, then, that the other requirement of the exemption statute has meaning. That phrase refers to all property owned and used by an organization "in connection with its curriculum, work, care, treatment and study" of the individuals in this population. Those properties are only exempt if the requisite research or training facility is maintained. In this context, it would make no sense to read the use of the word "and" as a further limitation on the exemption as defendant contends. Rather, we read the language to grant an exemption for property owned and used for the broader purposes listed in that phrase as long as the organization can meet the test set forth in the limiting proviso. That is to say, if the nonprofit corporation maintains the required research or training facility, then its other property owned and used in connection with its curriculum, and its property owned and used in connection with its work, and its property owned and used in connection with its care for, and its property owned and used in connection with its treatment of, and its property owned and used in connection with its study of the "feeble minded" is also exempt.
The contrary reading would make no sense because it would make the proviso entirely meaningless. The proviso applies to an entity that operates a research or training facility, and does not require both. If the exemption were allowed for an organization that only maintained a research facility, it would not necessarily also work with, care for or treat the affected individuals. Conversely, if the entity only operated a training facility, it would not necessarily treat or study the individuals in question. So read the exemption would become virtually meaningless.
The Tax Court judge rejected the reading of the statute urged upon him by defendant in favor of a more common-sense, but technically accurate, interpretation of the exemption, as do we. This reading squarely comports with the earlier decisions interpreting the statute's other grounds for exemption as well. While a facility that merely rents out dwellings to a disabled population is not entitled to an exemption, see Essex Prop. Urban Renewal Assocs., Inc. v. City of Newark, 20 N.J. Tax 360, 370 (Tax 2002); 1711 Third Ave., supra, 16 N.J. Tax at 184, this facility can hardly be described in those terms. In *799 short, we see nothing in the statute that requires that the group home itself not only provide curriculum for, work with, care for and treat the residents but that it also study them in order to fall within the exemption.
Finally, even were we persuaded that defendant's interpretation, rather than that of the Tax Court judge, was the correct one, we would find nonetheless that the record amply supports the conclusion that the personnel at plaintiff's Somers Point facility in fact engaged in activities that would qualify as "study" of the residents of the group home. The record is undisputed that for each of the residents there is an IHP, a technical document setting forth substantial information relating to the individual's abilities. Significantly, the IHP also includes specific goals and objectives to be pursued in order to maximize the individual's progress toward acquiring skills, including those relating to the activities of daily living. The progress of each resident toward achieving those goals is monitored and the goals are reviewed and modified regularly.
In the context of working with each individual in the group home to achieve those goals, study of each individual both as to his or her progress and as to the effectiveness of each training program is inevitable. Were we to conclude, therefore, that study of these residents is a requirement of the statutory exemption, the record adequately supports the conclusion that plaintiff complied with its obligation to demonstrate that it studies the residents as well.
Affirmed.