KAHN, J.T.C.
This is the court’s determination regarding plaintiffs motion for summary judgment requesting property tax exemption pursuant to N.J.S.A. 54:4-3.6, and defendant’s cross-motion for summary judgment seeking to dismiss plaintiffs complaint. The sole issue before this court is whether plaintiffs activity qualifies as an actual and exclusive use for an exempt charitable purpose within the meaning of N.J.S.A. 54:4-3.6.
Plaintiff is incorporated as a non-profit organization in the State of New Jersey and owns the subject property located at 193-211 Hunterdon Street (Block 244, Lots 31-40). Plaintiff administers and operates a twenty-four-unit apartment facility for developmentally and/or physically disabled persons. Defendant imposed a property tax assessment of $278,700 on the subject property for the year 2000.[1]
*362 On September 10, 1999, plaintiff filed a petition with the Assessor of Newark, seeking a tax exemption for the subject property. In a letter dated January 4, 2000, the Newark Tax Assessor denied plaintiffs petition. The taxpayer took an appeal to the Essex County Board of Taxation from the above described assessment. By memorandum of judgment dated August 21, 2000, the Essex County Board of Taxation affirmed the assessment and dismissed plaintiffs appeal without prejudice. Plaintiff then filed a complaint in this court. Plaintiffs motion for summary judgment relies on the certification of Alexander Brussovansky, Director of Housing of Cerebral Palsy of North Jersey, and the memorandum of law filed in support thereof.
Pursuant to a letter dated July 10, 2002, both parties stipulated to the following facts.
1. ) On February 21, 1991, Cerebral Palsy of North Jersey, Ine. (“CPNJ”), a New Jersey non-profit corporation, caused plaintiff to be incorporated under Title 15A of the Laws of the State of New Jersey as a non-profit corporation for the purpose of providing “elderly persons, handicapped persons and persons of low and moderate income with housing facilities and services specially designed to meet their physical, social and psychological needs and to promote their health, security, happiness and usefulness in longer living, the charges for such facilities and services to be predicated upon the provision, maintenance and operation thereof on a non-profit basis.” [2]
2. ) By Deed dated September 26, 1994, plaintiff acquired from the City of Newark the premises commonly known as 193-211 Hunterdon Street (Block 244, Lots 31-40), Newark, New Jersey and thereafter constructed a building containing 21,420 square feet of floor space on the lot consisting of approximately 24,055 square feet.
3. ) The building constructed was financed through the Department of Housing and Urban Development (“HUD”) and contains twenty-four apartments, which are leased to low-income persons having developmental and/or physical disabilities.
4. ) The project is managed by CPNJ.
5. ) Each of the twenty-four tenants is eligible for and receives rental subsidies from HUD through project-based federal Section 811 funds, and all but one receive Supplemental Security Income from Medicaid.
6. ) The rent for each of the residential units is $1,446 per month, 87% of which, on the average, is subsidized by federal funds.
7. ) The revenues received from the operation of the project are equal to the expenses incurred, with no profit being generated for either plaintiff or CPNJ.
*363 8. ) Most of the residents are wheelehair-bound or severely mobility-impaired who have recently become disabled through injury, accident or other sudden and unexpected cause.
9. ) The project also houses an on-site social worker whose first year’s salary was paid by a grant from Healthcare Foundation of New Jersey and subsequently by HUD.
10. ) The social worker, presently Jean Branch, does not charge the residents for services rendered, including the provision of ongoing counseling and support.
11. ) Almost all of the residents have on at least one occasion utilized the sendees of the on-site social worker, and more than 80% of them utilize her services on an ongoing basis.
12. ) The Initial Statement filed with the Tax Assessor of the City of Newark for tax exemption was denied by the City of Newark on January 4, 2001, without explanation.
13. ) The Essex County Board of Taxation affirmed the denial without prejudice.
14. ) Plaintiff has qualified with the Internal Revenue Service as a non-profit charitable organization, pursuant to I.R.C. Section 501(c)(3).
Plaintiffs financial statements[3] for the years ended June 30, 2000 and 2001 report that plaintiff is operated under Section 811 of the National Housing Act and regulated by HUD with respect to rental charges and operating methods. Plaintiff is subject to a rental assistance contract with HUD whereby plaintiff receives a significant portion of its rental income from HUD. The financial statements identify the Section 811 Rental Assistance Payments as plaintiffs major program.
Summary judgment should be granted where “there is no genuine issue as to any material fact challenged and the non-moving party is entitled to judgment or order as a matter of law.” R. 4:46-2. When deciding a motion for summary judgment under R. 4:46-2, the court must consider “whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.” Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995). For the reasons hereinafter *364 stated, this court grants defendant’s motion for summary judgment, and denies plaintiffs motion for summary judgment. There is no dispute with respect to a material fact, and defendant is entitled to judgment as a matter of law.
The statute under which the plaintiff seeks to qualify for a tax exemption provides that:
The following property shall be exempt from taxation under this chapter ... all buildings actually used in the work of associations and corporations organized exclusively for ... charitable puiposes ... all buildings owned by a corporation created under or otherwise subject to the provisions of ... Title 15A of the New Jersey Statutes and actually and exclusively used in the work of one or more associations or corporations organized exclusively for charitable or religious purposes ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious puiposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided the building is w’holly controlled by and the .entire income therefrom is used for said charitable, benevolent or religious purposes. The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the law's of this State and authorized to carry out the purposes on account of which the exemption is claimed
[N.J.S.A. 54:4-3.6.]
To qualify for exemption under N.J.S.A 54:4-3.6, a taxpayer must satisfy the following conditions: (1) it must be organized exclusively for a tax-exempt purpose; (2) its property must be actually and exclusively used for the tax-exempt purpose; and (3) its use and operation of its property must not be conducted for profit. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984); see also Pompton Lakes Senior Citizens Housing Corp. v. Pompton Lakes Bor., 16 N.J.Tax 331, 340 (Tax 1997) (citation omitted) (finding that a corporation’s certificate of incorporation must provide that its purposes are solely charitable to meet the “organized exclusively” requirement). Both parties stipulated to conditions (1) (organization for an exempt purpose) and (3) (non-profit operation). Plaintiffs Certificate of Incorporation states that it was organized “to provide elderly persons, handicapped persons and persons of low and moderate income *365 with housing facilities and services specially designed to meet them physical, social and psychological needs ... on a non-profit basis.” Therefore, the sole issue before this court is whether plaintiffs property is actually and exclusively used for a charitable purpose within the meaning of N.J.S.A. 54:4-3.6.
In Presbyterian Homes of the Synod of New Jersey v. Division of Tax Appeals, 55 N.J. 275, 284-86, 261 A.2d 143 (1970), our Supreme Court quoted the following definition of charitable purposes from the Supreme Court of Illinois:
[A]n application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government.
[55 N.J. at 284, 261 A.2d 143, citing Coyne Electrical School v. Paschen, 12 Ill.2d 387, 146 N.E.2d 73, 79 (1957).]
Based on the preceding definition, the Court concluded the following:
[T]he term 'charity’ in a legal sense is a matter of description rather than a precise definition. Therefore, the determination of whether property is devoted to charitable pui-poses depends upon the facts or circumstances of each ease. As a guide, however, it should be borne in mind that a sometimes stated justification for charitable tax exemptions is that if the charitable work -were not being done by a private party, it would have to be undertaken at public expense.
[Presbyterian Homes, supra, 55 N.J. at 285, 261 A.2d 143.]
The burden of proving tax-exempt status is upon the party claiming exemption. Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 330, 66 A.2d 534 (1949) (citation omitted). It is a well-established principle that all property must carry its just and equal share of the burden of taxation. Property is deemed taxable unless expressly exempt from taxation. Weymouth Tp. v. Mem’l Park Family Practice Ctr., Inc., 7 N.J.Tax 589, 592 (Tax 1985). “Statutes granting exemption from taxation represent a departure and consequently they are construed most strongly against those claiming exemption.” Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420 (1961). “The party seeking an exemption has the burden of bringing itself clearly within the exempting statute . . . .” Pingry Corp. v. Hillside Tp., 86 N.J.Super. 437, 448, 207 A.2d 194 (App.Div.1965), rev’d on other grounds, *366 46 N.J. 457, 217 A.2d 868 (1966). In the present case, plaintiff fails to prove that its activity qualifies as an actual and exclusive use for a charitable purpose within the exempt purposes set forth under N.J.S.A. 54:4-3.6.
Depending upon the specific facts and circumstances of each case, courts have granted property tax exemption to certain charitable organizations. Plaintiff relies on Salt and Light Co., Inc. v. Mount Holly Tp., 15 N.J.Tax 274 (Tax 1995), aff'd, 16 N.J.Tax 40 (App.Div.1996), certif. denied, 148 N.J. 458, 690 A.2d 606 (1997) in support of its claim for tax exemption. In Salt and Light Co., supra, the plaintiff, Salt and Light Co., Inc., provided temporary housing and counseling services to homeless persons. Salt and Light operated twenty-four residences in Mount Holly Township, which it purchased and renovated using funds from HUD, federal home loan grants, government grants and funds, including charitable contributions. Two-thirds of its residents received public assistance, which included some form of government welfare, distributed directly to the plaintiff. To the extent they were able, the remaining one-third paid up to thirty percent of them income as rent. The plaintiff showed that its average daily cost to support the homeless was below the amount it would cost the government to do so.[4] The rental payments were below market. Individuals who had no source of income paid no rent to the plaintiff, and no individual was evicted solely because of an inability to pay. Salt and Light compensated for the difference by raising funds from private donors. No one was turned away for financial reasons. Under the facts of the Salt and Light Co. ease, the Tax Court held that even though Salt and Light received government subsidies, it qualified for tax exemption in its use of its facilities to provide temporary shelter and services to the homeless. Id. at 295-96.
In the present case, plaintiff argues that, similar to Salt and Light Co., supra., plaintiff is entitled to tax exemption pursuant to *367 N.J.S.A. 54:4-3.6, because it is a non-profit corporation which provides housing and counseling to low income, developmentally and/or physically disabled persons, and thereby relieves the government from doing so. However, plaintiffs case is distinguishable from Salt and Light Co. First, Salt and Light Co. extended housing and services to homeless persons who did not qualify for government aid, who paid Salt and Light below market rents, or no rent at all for housing in Salt and Light’s facilities. Salt and Light also established a policy of retaining residents who were unable to pay. Plaintiff, however, provided no evidence to support a finding that (1) plaintiffs rent of $1,446 per month for an apartment in Essex County is below market rents; (2) individuals who do not qualify for HUD or government aid would be admitted into plaintiffs facility; (3) plaintiff evicts or does not evict tenants who are unable to pay rent left uncovered by HUD[5]; and (4) plaintiff would admit or retain a disabled person who could pay no rent at all for housing.
Second, plaintiff points to the fact that in addition to providing housing, its facility has an on-site social worker who provides ongoing counseling and support creating a “unique combination of housing and counseling” similar to Salt and Light Co., supra. Salt and Light Co. provided case managers, who met and counseled each resident at least twice a week in forty-five to ninety minute sessions, the staff provided advice and assistance in obtaining employment, medical care, childcare, education, and job training. The staff taught residents basic living skills, such as cleaning and cooking. Here, Healthcare Foundation and HUD paid for the social worker’s salary, at no cost to plaintiff. Other than plaintiffs statement that its onsite social worker provides counseling and support, there is no evidence as to what these services entail. Absent any evidence to the contrary, this court finds that plaintiffs counseling service is not so unique as to warrant tax exemption. Furthermore, this court finds that plaintiffs counseling and *368 support service is incidental to plaintiffs main function, which is to rent apartments to elderly or disabled persons. See also Presbyterian Homes, supra, 55 N.J. at 289, 261 A.2d 143 (finding that nursing and health services provided for the elderly in retirement facilities were merely incidental to the facilities’ main function).
Additionally, “nonprofit status cannot be equated with charitableness. Rather, it is but one factor which merits consideration in the determination whether property is being used for charitable purposes.” Presbyterian Homes, supra, 55 N.J. at 286, 261 A.2d 143. Accordingly, plaintiffs qualification with the IRS as a nonprofit charitable organization pursuant to I.R.C. § 501(c)(3), is not, in and of itself, enough to qualify plaintiff for property tax exemption under N.J.S.A. 54:4-3.6. See Black United Fund v. East Orange, 17 N.J.Tax 446 (Tax 1998); Pompton Lakes Senior Citizens Housing Corp. v. Pompton Lakes Bor., 16 N.J.Tax 331 (Tax 1997); New Jersey Carpenters Apprentice Training and Educ. Fund v. Kenilworth, 147 N.J. 171, 685 A.2d 1309 (Tax 1996).
In a recent opinion, the Appellate Division held that a non-profit corporation, which provided health and dental care to impoverished persons, qualified for property tax exemption irrespective of the fact that the corporation was almost entirely supported by Medicaid payments and government grants. Southern Jersey Family Medical Centers, Inc. v. City of Pleasantville, 351 N.J.Super. 262, 798 A.2d 120 (App.Div.2002), petition for cert. filed, S.Ct. Docket No. 53265; see also Catholic Charities of the Diocese of Camden v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.1970), certif. denied, 56 N.J. 474, 267 A.2d 56 (1970) (holding that a nursing home facility, which accepted all persons regardless of ability to pay, and whose rates were proven lower than for-profit nursing homes, was entitled to tax exemption). In Southern Jersey, supra, the plaintiff, a non-profit corporation, operated a community health care facility, which provided health and dental care to indigent persons. Southern Jersey’s policy was to “treat anyone,” and charged patients without insurance according to a sliding fee scale based on each patient’s income. No person was denied service solely because of inability to pay. Southern Jersey *369 was required to give full discounts to persons at or below poverty income guidelines. The court found that Southern Jersey provided vital services unique to the area where the facility is located.
Furthermore, the Court in Southern Jersey, supra, distinguished between funds Southern Jersey received for services rendered (i.e., Medicaid payments) and funds received from federal grants. The court found that the facility earned the former by providing medical services to indigent patients, and therefore, “receipt of these funds ... does not impact upon its ... exclusive operation for charitable purposes.” Southern Jersey, supra, 351 N.J.Super. at 268, 798 A.2d 120. But see Mohammed Abdallah v. OCHC, 351 N.J.Super. 280, 798 A.2d 131 (App.Div.2002), where in a charitable immunity case, the court held that OCHC was not deemed charitable for immunity purposes because the record demonstrated no attempt to obtain charitable contributions. The court further qualified that “not all public grants paid to a nonprofit corporation will bar a property tax exemption.” Id. at 275, 798 A.2d 131.
In the present case, plaintiff has stipulated that its rental fee is $1,446 per month. As discussed above, there is no evidence that plaintiff accepts elderly or disabled tenants, regardless of the person’s ability to pay. Absent evidence to the contrary, this court finds that plaintiff is essentially renting apartments to disabled persons, and therefore, does not provide a service unique to the area in which it is located.
“A truly charitable use is not necessarily vitiated by the receipt of government support on behalf of beneficiaries ... so long as the charitable entity to some extent relieves a burden on government.” Salt and Light Co., supra, 15 N.J.Tax at 288, 291-92. Plaintiff fails to demonstrate that its operation of the subject property relieves the government of any burden. Contrary to Southern Jersey, supra, plaintiff received funds from HUD to construct the subject property and continues to receive federally subsidized rent income from the Section 811 Rental Assistance Payments program. These amounts are rents paid by HUD for plaintiffs tenants, all of whom have qualified for this assistance. *370 These payments are not earned for services rendered, such as healthcare or medical services, but simply rental payments. Furthermore, there is no evidence on the record that plaintiffs rental fee is lower than market rent, that plaintiff serves disabled persons who are not supported by government subsidies, or if plaintiff subsidizes tenants who are unable to pay, thus relieving government of this burden. Salt and Light Co., supra, 15 N.J.Tax at 290-91. If a tenant was evicted for financial reasons, that person might become a public charge, and the State would be obligated to provide care.
This court finds that plaintiffs case is analogous to 1711 Third Avenue, Inc. v. Asbury Park, 16 N.J.Tax 174 (Tax 1996). In 1711 Third Ave., supra, the plaintiff, a non-profit corporation, owned property, which housed tenants suffering from mental illness. The plaintiffs property was funded in large part by HUD’s Section 811 supportive housing program. The plaintiffs tenants were unemployed and derived their income from social security payments. The tenants made rental payments equal to thirty percent of their income. Plaintiffs non-profit management company provided counseling and other services to the tenants. The court held that the plaintiff failed to offer the proper proofs to bring itself clearly within the exempting statute of N.J.S.A. 54:4-3.6. Id. at 182-83.
The court in 1711 Third Avenue concluded that the following selves as evidence in determining a plaintiffs exemption claim: (1) financial statements of plaintiff and its managing company, (2) detailed explanation of plaintiffs and management company’s use of revenues, including amounts paid for salaries, (3) proof that plaintiff charges below market rents, (4) explanation of financial arrangements between plaintiff and management company, (5) breakdown of plaintiffs and management company’s sources of revenues, (6) whether plaintiff competes with for-profit entities providing housing, and (7) whether plaintiff evicts tenants who become unable to pay rent. Id. at 184; see also Presbyterian Homes, supra, 55 N.J. at 286-90, 261 A.2d 143 (holding that a nonprofit corporation which owned a retirement community was *371 not tax exempt because its articles of incorporation, bylaws, and agreements faded to bind the corporation to care for elderly residents who were unable to pay monthly charges); St. Luke’s Village, Inc. v. Peapack & Gladstone Bor., 11 N.J.Tax 76 (Tax 1990) (holding that providing affordable housing to low income persons was not a charitable purpose where there was security for rental payments and residents were required to leave if unable to pay for operating expenses). Similar to 1711 Third Avenue, supra, plaintiff failed to demonstrate that the subject property is used for charitable purposes within the meaning of N.J.S.A. 54:4-3.6. Plaintiff failed to meet its burden of proof as claimant and bring itself clearly within the meaning of the exempting statute. Without such proofs in the record, this court can only conclude that plaintiff is subject to property tax.
For the aforementioned reasons, this court grants defendant’s motion for summary judgment, dismissing the complaint. Plaintiffs motion for summary judgment is denied.

 The 2000 property tax assessment included an assessment of the land of $13,600 and an assessment of the improvements of $265,100 totaling $278,700.

 Plaintiff's Certificate of Incorporation, Article II, Section (a).

 The independent auditors of McKinley, White & Co., L.L.P., prepared plaintiff’s financial statements.

 Salt and Light received $36 per day for an individual versus the cost of a traditional shelter, which was $52 per day.

 Plaintiff stipulated that approximately 87% of its rental revenue is derived from HUD.