BIANCO, J.T.C.
This is the court’s determination regarding the motion for Summary Judgment filed by plaintiff, Community Access Unlimited Inc. (formerly known as Association for Advancement of the Mentally Handicapped) (“CAU”), and the cross motion for Summary Judgment filed by defendant, City of Elizabeth (“Elizabeth”).
CAU is a Not-for-Profit Corporation established under Title 15 or 15A of the laws of New Jersey, and qualifies as a tax-exempt non-profit organization under § 501(c)(3) of the Internal Revenue Code.[1] CAU seeks an exemption from local property taxation pursuant to N.J.S.A. 54:4-3.6 arguing that: (1) it is an entity exclusively organized and used for the moral and mental improvement of men, women, and children; or, (2) it is exclusively formed for a charitable purpose and used for charitable activities.
CAU owns three properties at issue (collectively “the subject properties”), all of which are located in the City of Elizabeth, Union County. The first property is located at 312 Stiles Street (“Stiles Street property”) and designated as Lot 1407 in Block 13 *607 on the official Tax Map of the City of Elizabeth (“Tax Map”). The second property is located at 915 West Jersey Avenue (“West Jersey Avenue property”) and designated as Lot 1123 in Block 10 on the Tax Map. The third property is located 120-126 Westfield Avenue (“Westfield Avenue property”), Unit 11 and designated as Lot 1626 in Block 13 on the Tax Map.
Elizabeth maintains that the subject properties should not be exempt from taxation since the primary use of these properties is merely to house people with mental disabilities.[2] Housing people with mental disabilities alone or even as a primary purpose, according to Elizabeth, does not demonstrate that CAU is (1) organized exclusively for the moral and mental improvement of men, women, and children, or (2) organized for a charitable purpose, within the meaning of N.J.S.A. 54:4-3.6. Moreover, even if CAU is doing something that might qualify as the moral and mental improvement of men, women, and children, Elizabeth contends it may be doing so off site, and, in any event, only as a secondary purpose.
The facts are not in dispute.[3] Individuals with some form of mental disability occupy the subject properties. The Stiles Street property was conveyed to CAU by Mary Anne Boylan, individually and as Executrix under the Last Will and Testament of Marion D. Jensen, deceased, and Donald Jensen (“Grantors”) for consideration of $1.00. The Stiles Street property consists of a supported living facility and is occupied by the Grantors’ son Robert Jensen for a monthly rental fee of $533. It is also occupied by two other individuals who each pay a monthly rental fee of $350. The West Jersey Avenue property was conveyed to CAU by Robert A. Obler *608 for consideration less than $100. This property is occupied by Robert A. Obler’s son, Mark Obler, for a monthly rental fee of $125. It is also occupied by two other individuals who pay a monthly rental fee of $300 and $200 respectively. The Westfield Avenue property was conveyed to CAU by GE Capital Mortgage Services for consideration of $53,000. The property is occupied by two individuals who pay a monthly rental fee of $181 and $468 respectively.
The amount of rent paid by each occupant of the subject properties is based on many factors, including programmatic requirements, need, and ability to pay. The amount of rent charged never exceeds the fair market value of rent for similarly situated dwellings located in Elizabeth. Furthermore, the amount of rent charged never exceeds thirty percent of a tenant’s monthly income.[4] If tenants do not make enough money to pay the rents charged, CAU supplements the monies required to administer its services and satisfy the properties’ debt service from its own resources, consisting of funds made available through various state grants as well as substantial capital campaigns conducted by CAU each year. Furthermore, CAU does not evict tenants if they fail to pay rent; rather, CAU supplements the monies until that person can pay.[5]
*609 The residents of the subject properties are members of CAU and involved in programs offered by CAU. CAU members are placed in housing and programs, which address their specific needs as well as level of independence. CAU’s ultimate goal, as stated in the certificate of amendment to the corporate charter, is to provide its members with an opportunity to live independently and lead a normal productive life as a citizen, including paying one’s own living expenses. CAU provides a program for disabled individuals called the Supportive Living Apartment Program (“SLAP”). SLAP members are guided by CAU support staff members two to four times per week in money management and counseling. CAU also provides a Community Support Program (“CSP”) for people with disabilities who are ineligible for state funded rehabilitative programs. This program is funded through private fees and donations. All tenants who reside in the subject properties are in either the SLAP or CSP programs.
The court finds that the issue presented in this matter is ripe for summary judgment. Under the provisions of R. 4:46-2 and the standards for consideration of summary judgment motions set forth in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146, 147 (1995), the court finds that there is no genuine issue with respect to a material fact.
*610 The applicable exemption statute is N.J.S.A. 54:4-3.6, which provides in pertinent part:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, ... all buildings actually used in the work of associations and corporations organized exclusively for ... charitable purposes, ... all buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes and actually and exclusively used in the work of one or more associations or corporations organized exclusively for charitable or religious purposes, which associations or corporations may or may not pay rent for the use of the premises or the portions of the premises used by them; ... in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to eases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes. The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed ...
[N.J.S.A. 54:4-3.6].
Tax exemption statutes are to be strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation. Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420, 422-23 (1961). Accordingly, CAU has the burden of demonstrating that the subject properties should be exempt from taxation. To be exempt from taxation under N.J.S.A. 54:4-3.6, CAU must meet three requirements. First, CAU must be organized exclusively for the moral and mental improvement of men, women and children, or for a charitable purpose. Second, the subject properties must be actually and exclusively used for the tax-exempt purpose. Third, the operation and use of the subject properties must not be for profit. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517, 518 (1984). Since CAU’s not-for-profit status is not in dispute, the Court need only focus on the first two requirements.
When making a determination of whether or not an entity “is organized exclusively for an exempt purpose, the courts look *611 only to the entity’s organizational documents,” which include the By-Laws as well as Articles of Incorporation. Black United Fund v. East Orange, 17 N.J.Tax 446, 455 (1998), aff'd, 339 N.J.Super. 462, 772 A.2d 65 (App.Div.2001)(emphasis added); See Planned Parenthood of Bergen County, Inc. v. Hackensack City, 12 N.J.Tax 598, 610 n. 6 (1992), aff'd, 14 N.J.Tax 171 (App.Div. 1993) (holding “that the term ‘organized’ in the statute refers to the entity’s organizational documents, its corporate charter”). See also Intercare Health Systems, Inc. v. Cedar Grove Tp., 11 N.J.Tax 423, 425 (1990), aff'd 12 N.J.Tax 273 (App.Div.1991), certif. denied 127 N.J. 558, 606 A.2d 369 (1992).
As stated in CAU’s Articles of Incorporation, the purpose of the corporation is:
To provide community access through effective, systematic, comprehensive support services for people with handicaps and their families, giving them the opportunity to live independently and to lead normal and productive lives as citizens integrated into the general community. Services also include the provision of decent housing preferably income integrated and affordable particularly to low and moderate income people.
Article II, Section A of CAU’s By-Laws provide that its general purpose is to “assist mentally handicapped individuals without regard to race, sex or national origin to reach their fullest potential for self-sufficiency in all aspects of their lives.” Article II, Section B of CAU’s By-Laws states:
This corporation shall carry out only such charitable, educational, and research purposes as are included within the terms of Section 501(c)(3) of the Internal Revenue Code of 1954 as amended, governing taxation of corporations by the United States of America and in compliance with N.J.S.A. 15A.
In St. Luke’s Village, Inc. v. Peapack & Gladstone Bor., 11 N.J.Tax 76, 77, 80 (1990), the Tax Court held that St. Luke’s Village was organized exclusively for religious or charitable purposes where the corporation was formed to “construct and operate senior-citizen apartment housing at reduced rates affordable to persons of low and moderate income for the benefit of members of St. Luke’s Parish, the people of Peapack-Gladstone and their respective relatives.”[6] In Southern Jersey Family Medical Cen *612 ters, Inc. v. City of Pleasantville, 351 N.J.Super. 262, 798 A.2d 120 (App.Div.2002), aff'd 176 N.J. 184, 821 A.2d 1147 (2003), the Appellate Division found that Southern Jersey was organized for a charitable purpose based primarily on the sentence of their Articles of Incorporation, which stated “[t]he purposes for which this Corporation is formed are exclusively charitable____”[7] Id. at 266, 798 A.2d at 122.
In Planned Parenthood, supra, 12 N.J.Tax 598, the Tax Court held that Planned Parenthood was not organized exclusively for a charitable purpose. Planned Parenthood’s corporate charter stated three purposes for which it was organized:
(1) to promote scientific research and education relating to the medical, sociological, economic and public health aspects of birth control; (2) to operate a medically supervised center where underprivileged mothers may receive contraceptive information or treatment when prescribed by physicians in conformity with the laws of the State of New Jersey; (3) to operate with state or national birth control leagues in the exchange of information and data for the purposes of maintaining efficient and high standards of medical service and in gathering the scientific records and data used in such leagues.
[Planned Parenthood, supra, 12 N.J.Tax at 609-610].
Some of the activities authorized by Planned Parenthood’s corporate charter were restricted to servicing underprivileged women while others were not. The Tax Court concluded that the activities restricted to underprivileged women met the charitable organization test, but denied the tax exemption based on the fact that others activities were not restricted to servicing underprivileged women. Id. at 610. In contrast, all of the activities listed in CAU’s organizational documents are restricted to people with “mental handicaps.” [8]
*613 Based upon CAU’s By-Laws and Articles of Incorporation and applicable case law, the court is satisfied that CAU is organized for a charitable purpose. Accordingly, it is not necessary for the court to determine whether CAU is also organized for the moral and mental improvement of men women and children pursuant to N.J.S.A. 54:4-3.6.[9] The court now turns to the question of whether the subject properties are being used for that charitable purpose.
 The determination of whether or not property is being used for a charitable purpose depends on the facts and circumstances of each case. There is no precise definition of what constitutes a charitable activity. Presbyterian Homes of the Synod of New Jersey v. Division of Tax Appeals, 55 N.J. 275, 285, 261 A.2d 143, 148 (1970). Multiple factors must be taken into consideration when making the determination as to an organization’s charitable status, including but not limited to the organization’s social services activities and source of funding. Abdallah v. Occupational Ctr. of Hudson County, Inc., 351 N.J.Super. 280, 284, 798 A.2d 131, 133-34 (App.Div.2002). In support of its contention that the subject properties should be exempt from taxation, CAU relies on Salt and Light Co., Inc. v. Mount Holly, *614 Tp., 15 N.J.Tax 274 (1995), aff'd, 16 N.J.Tax 40 (App.Div.1996), certif. denied, 148 N.J. 458, 690 A.2d 606 (1997) and Essex Props. Urban Renewal Assocs., Inc. v. City of Newark, 20 N.J.Tax 360 (2002).
In Salt and Light Co., supra, plaintiff, Salt and Light Co. (“Salt and Light”), used its properties to provide temporary housing and counseling services to the homeless. Id. at 277. Salt and Light operated approximately twenty-four residences for the homeless, that were purchased with United States Department of Housing and Urban Development (HUD) monies or Federal Home Loan grant monies, and renovated through a combination of government grants and funds generated by Salt and Light. Id. at 280. Approximately two-thirds of the 127 residents in Salt and Light’s program received public assistance. Id. at 281. To the extent they were able, the remaining one-third paid up to 30% of their income as rent. Id. The Tax Court held that Salt and Light used its facilities for a charitable purpose by providing temporary shelter and services to the homeless, and therefore qualified for tax exemption under N.J.S.A. 54:4-3.6, even though it received government subsidies. Id. at 295-96.
In Essex Properties, supra, 20 N.J.Tax 360, plaintiff, Essex Properties Urban Renewal Associates, Inc. (“Essex Properties”), relying on Salt and Light Co., supra, 15 N.J.Tax 274, sought a property tax exemption pursuant to N.J.S.A. 54:4-3.6. Essex Properties was a not-for-profit corporation that provided housing and counseling to low income, developmentally and/or physically disabled persons. Essex Properties argued that it was providing a service that relieved the government of a burden. In refusing to grant a property tax exemption to Essex Properties, the Tax Court distinguished the facts of that case from those in Salt and Light Co. Essex Properties, 20 N.J.Tax 360, at 367. Unlike Salt and Light, the Tax Court found that Essex Properties failed to establish that (1) rents charged were below market rents; (2) individuals who did not qualify for government aid would be admitted into the program; (3) individuals who are were unable to pay rent that was not paid through government funding would not be evicted; and (4) disabled individuals who could not pay any *615 rent would be admitted. Ibid. Furthermore, the Tax Court also pointed out that the on-site social workers provided by Essex Properties were different from the on-site case managers provided by Salt and Light. Ibid.[10] Due to a lack of evidence to the contrary, the Tax Court held that Essex Properties was “essentially renting apartments to disabled persons, and therefore, did not provide a service unique to the area in which it [was] located.” Id. at 369. Moreover, the Tax Court concluded that Essex Properties failed to relieve the government of any burden. Ibid.
Although Salt and Light Co., supra, 15 N.J.Tax 274, concerned housing the homeless [11] rather than housing the mentally disabled, this court finds that the facts of Salt and Light Co., supra, are more analogous to those in the present case.[12] Like the non-government subsidized residents in Salt and Light Co., supra, CAU’s residents only spend up to 30% of their monthly income on rent. Furthermore, existing CAU tenants who can no longer pay rent are not evicted solely due to an inability to pay rent and, CAU will also admit and retain an individual with a mental disability who cannot pay rent, provided there is space available. *616 Additionally, CAU services are available to any member of the general public who is mentally disabled, provided space is available.
Unlike the case managers in Essex Properties, 20 N.J.Tax 360, there is no dispute that CAU’s counselors are specially trained to provide advice and assistance in obtaining employment, medical care and childcare, education, and job training. CAU counselors meet regularly to provide these services to CAU’s members.
In Presbyterian Homes, supra, 55 N.J. 275, 261 A.2d 143, the Supreme Court held that a retirement community was not exempt from taxation under N.J.S.A. 54:4-3.6 based on various factors. First Presbyterian Homes was not obligated, through its organizational documents or residence agreements, to care for persons who became financially or physically unable to meet their monthly charges. Id. at 286, 261 A.2d at 148-49. Second, the residence agreements did not require Presbyterian Homes to care for residents once the agreements were terminated; thus, they could become a burden on the state. Id. at 286-287, 261 A.2d at 148-49. Third, although the Court acknowledged that charging rent does not negate a charitable purpose, in and of itself, the amount and nature of the fees and rentals charged by Presbyterian Homes negated the charitable purpose.[13] Id. at 287, 261 A.2d at 149. The Court held that “although care of the aged may be laudable, whether it will constitute a charitable purpose depends upon the manner in which the particular property is used to accomplish that end.” Id. at 288, 261 A.2d at 150.
*617 None of the factors that led the Court to deny tax-exempt status in Presbyterian Homes, supra, 55 N.J. 275, 261 A.2d 143, are present here. Most notably, unlike the rental fees charged in Presbyterian Homes, supra, the rents charged by CAU are under market value.[14]
Elizabeth contends that CAU’s primary purpose is to house people with mental disabilities and any service it provides that may improve or rehabilitate its members is purely secondary. It appears to this court, however, that CAU provides much more than just housing to its members residing at the subject properties. In fact, the court finds that the housing itself is secondary to CAU’s main purpose, which is to give individuals incapable of functioning on their own an opportunity to live as close to a normal life as possible. CAU argues that if not for the housing and social services it provides to its members, a public facility like Graystone Psychiatric Hospital would have to care for them at public expense.
The courts and the Legislature alike have recognized that rehabilitating the mentally disabled is an important and legitimate governmental concern. In Township of Washington v. Central Bergen Community Mental Health Center, Inc., 156 N.J.Super. 388, 419-420, 383 A.2d 1194, 1209 (Law Div.1978), the court observed that,
[s]tate concern in this area [of rehabilitating the mentally disabled] is amply demonstrated by the enactment of N.J.S.A. 30:9A-1 et seq. wherein the Legislature has carefully charted a course directing vastly expanded programs to meet the *618 needs of the less fortunate citizens who suffer from mental disabilities requiring care and treatment but not institutionalization.
By providing their mentally disabled members with housing and rehabilitative services, CAU contends that it is relieving a potential public burden and furthering a legitimate state concern even though CSP members are ineligible for state funded rehabilitative programs. The court agrees, and dismisses Elizabeth’s unsupported claims that since some of CAU’s tenants were already living at the subject properties before they were acquired by CAU, they were capable of functioning on their own and would therefore not have become public burdens without CAU’s assistance. To the contrary, the facts indicate that some of CAU’s members were in the care of their families, before their families transferred property to CAU with the understanding that their mentally disabled family member would be cared for. Neither the prior care nor the foresight to plan for the future care of the mentally disabled by responsible family members should serve to disqualify CAU or similar organizations from a tax exemption when it is clear that the statutory requirements for exemption are met.
An analysis cognizant of CAU’s source of funding is critical to the extent that it establishes the organization as “undertaking acts by which the government is relieved pro tanto from a burden it would otherwise have to perform.” Parker v. St. Stephen’s Urban Dev. Corp., 243 N.J.Super. 317, 326, 579 A.2d 360, 365 (App.Div. 1990). In contrast to the organization denied tax-exempt status in Parker, CAU solicits private contributions and engages yearly in substantial capital campaigns. In addition, the court notes that two of the subject properties were donated to CAU for consideration of less than $100. Accordingly, CAU’s funds do not simply consist of state grants; CAU depends on charitable contributions for its support. Therefore, CAU is able to reduce the government’s burden by providing mentally disabled members with rehabilitative services and housing at a lower cost per individual than the government.
When looking at the totality of the facts and circumstances in this case, the court finds that the manner in which the subject *619 properties are actually and exclusively used is consistent with and in furtherance of CAU’s stated charitable purpose. Additionally, since CAU is organized for a charitable purpose and its subject properties are not used for profit, then those properties qualify for property tax exemption pursuant to N.J.S.A. 54:4-3.6. Accordingly, CAU’s motion for summary judgment is granted. Elizabeth’s cross-motion for summary judgment is denied. The Tax Court Clerk is directed to enter judgment consistent with this opinion.

 Qualification with the IRS as a non-profit charitable organization pursuant to I.R.C. § 501(c)(3) is not, in and of itself, enough to qualify CAU for a property tax exemption under N.J.S.A. 54:4-3.6. See Black United Fund v. East Orange, 17 N.J.Tax 446(1998).

 During oral argument, Elizabeth conceded that all occupants of the three properties at issue are mentally disabled to some extent.

 When asked by the court during oral argument whether there were any material facts in dispute, CAU’s counsel replied, “well, there is no rebuttal to my supplemental certification. So, I assume [no material facts] are in dispute.” Elizabeth’s counsel did not dispute this, or any other factual contention during oral argument. In fact, when the court acknowledged that no material facts were in dispute at the end of oral argument, Elizabeth’s counsel agreed.

 CAU provided the court with an article entitled "More U.S. Families spending half their income on housing”, which demonstrates that many low and moderate working families spend fifty percent or more of their salaries on rent or mortgages. See Scott v. Salerno, 297 N.J.Super. 437, 447, 688 A.2d 614, 619 (App.Div.1997), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997) (stating that "parties cannot complain that the trial court took as true facts which were not contested or challenged").

 Elizabeth noted that each of CAU's tenants signed a lease that contains a paragraph entitled "Eviction" which states:
If the Tenant does not pay the rent within 15 days after it is due, the Tenant may be evicted. The Landlord may also evict the Tenant if the Tenant does not comply with all the terms of this Lease and for all other causes allowed by law. If evicted, the Tenant must continue to pay the rent for the rest of the term. The Tenant must also pay all the costs, including reasonable attorney fees, related to the eviction and the collection of any moneys owed to the Landlord, along with the cost of re-entering, re-renting, and repairing *609 the Apartment. Rent received from any new tenant will reduce the amount owed to the landlord.
In reply, CAU submitted a supplemental certification of Sydney Blanchard,
Executive Director of CAU. In that certification, Mr. Blanchard explained that: Individuals who have no source of income pay no rent and no individual is ever evicted solely because of an inability to pay. Contrarily, CAU has established a policy of retaining residents who are unable to pay. CAU will admit and retain a person with a disability who can pay no rent at all for housing, subject to availability ... The purpose of the eviction clause in its form lease is to preserve the right to evict a tenant who acts in a disruptive manner (such as, for example, engages in drug abuse, or physically violent behavior) that causes harm to other residents, not to evict a tenant due to an inability to pay rent. In fact, CAU has never evicted any tenant from the subject properties for any reason.

[Emphasis added],

Elizabeth did not dispute Mr. Blanchard’s contentions.

 Ultimately, the Tax Court ruled that St. Luke's Village was not actually and exclusively used for a charitable purpose. St. Luke's Village, supra, 11 N.J.Tax at 81.

 The Appellate Division reversed the Tax Court's holding on other grounds.

 CAU's original Articles of Incorporation were amended in 1992. As a result the words "mentally handicapped" were changed to "people with handicaps." In his aforementioned certification, CAU’s Executive Director Sydney Blanchard explained that.
The reason for the ... revision of the description of its purpose was to delete the words "mentally handicapped" because the usage of those particular words had come to be considered as derogatory, insulting and offensive to the individuals being served. It was no longer acceptable to refer to these *613 individuals as “mentally handicapped”; it was acceptable to refer to them as "people with handicaps.” The changes were made so as not to offend the very people it was trying to help. The changes were cosmetic only and did not alter the purposes of CAU as set forth in its enabling documents or the services CAU actually provided.
The court is satisfied that, when read together, CAU's By-Laws and Articles of Incorporation as amended, do not alter CAU's purposes or services as originally intended in its enabling documents.

 The court notes, however, that in 1711 Third Avenue, Inc. v. City of Asbury Park, 16 N.J.Tax 174, 181 (1996), a provision of plaintiff's articles of incorporation that purported to provide “housing facilities designed to meet the ‘physical, social and psychological needs' of consumers of mental health services might qualify plaintiff as being organized for the moral and mental improvement of men, women and children.” See also Schizophrenia Found, of N.J. v. Montgomery Tp., 6 N.J.Tax 594, 598, 601 (1984), rev’d on other grounds, 6 N.J.Tax 439 (App.Div.1984) (concluding that claimant was organized for moral and mental improvement of men, women, and children where one of its stated purposes was to "assist the schizophrenic patient to rehabilitate and readjust to society”).

 The case managers provided by Salt and Light met and counseled each resident at least twice a week in forty-five to ninety minute sessions. They provided assistance and advice in obtaining employment, medical care, childcare, education, and job training. In addition, they taught residents basic living skills, such as cleaning and cooking. Salt and Light Co., supra, 15 N.J.Tax at 282. In Essex Properties, Inc., supra, 20 N.J.Tax at 367, the Tax Court found that the social workers provided by Essex Properties were paid through government funding and there was no evidence as to what services were provided by those social workers.

 In Salt and Light Co., supra, 15 N.J.Tax 274, the Tax Court noted that, had there not been the issue of government funding involved in that case, there would have been no question that "providing housing to the homeless on a not-for-profit basis qualifies as a charitable use.” Id. at 285. The Tax Court farther stated that, "both the legislative and executive branches of government have recognized that government has an obligation to meet the needs of the homeless.” Ibid.

 The court notes that the U.S. Conference of Mayors estimates that 23% of the homeless population in America is mentally disabled. (U.S. Conf. of Mayors, A Status Report on Hunger and Homelessness in America’s Cities: 2002 (Dec. 2002) at p. 61.)

 The court reiterated the holding in Methodist Old Peoples Home v. Korzen, 39 Ill.2d 149, 233 N.E.2d 537 (1968), which stated:
While charging fees would not necessarily remove plaintiff from the categoty of a charitable institution ... the fact that it allocates living space from the standpoint of desirability of location and size on the basis of the amount of the Founder's Fees and monthly charges paid by a resident seems to us lacking in the warmth and spontaneity indicative of charitable impulse. Rather, it seems more related to the bargaining of the commercial market place.
[Id. at 542].

 Elizabeth contends that CAU has not established the market rents of the subject properties. However, CAU provided the court with the Fair Market Rents for Existing Housing, published in the Federal Register, Vol. 67, No. 189 on September 30, 2002, which indicates that the fair market rent for a two-bedroom apartment in Union County, New Jersey is $949 per month. It further indicates that the fair market rent for a three-bedroom apartment in Union County, New Jer sey is $1,195 per month. Elizabeth did not refute this information or otherwise provide the court with market rental data that refuted, contradicted, discredited, or rendered unreliable the data provided by CAU. See In re Adoption of a Child of Indian Heritage, 219 N.J.Super. 28, 41, 529 A.2d 1009, 1015-16 (App.Div.1987), aff'd, 111 N.J. 155, 543 A.2d 925 (1988) (where the court acknowledges that guidelines found in the Federal Register are not binding but do provide useful guidance).