PER CURIAM.
Plaintiff Hemisphere International Plaza, L.P. (Hemisphere), filed a complaint with the Tax Court alleging that the 2003 tax assessment imposed by the City of Newark (the City) on its land and office building was excessive. The property was originally assessed in 2003 for $30,675,300 as the result of a city-wide revaluation. Following a trial, a judgment was entered by the Tax *287 Court reducing the assessment of the property to $19,300,000 for the tax year 2003.
On appeal, the City requests that the ruling of the Tax Court be reversed and that the matter be remanded, for the following reasons:

POINT I

THE COURT ABUSED ITS DISCRETION IN DENYING THE REQUEST BY THE CITY OF NEWARK FOR AN ADJOURNMENT OF THE TRIAL DATE TO ALLOW THE COMPLETION OF THE CITY’S APPRAISAL REPORT

POINT II

THE COURT ERRED IN ITS DETERMINATION OF THE HIGHEST AND BEST USE OF THE PROPERTY

POINT III

THE COURT ERRED BY ALLOWING DIXON TO PROFFER TESTIMONY THAT REPRESENTED BARE CONCLUSIONS UNSUPPORTED BY PROBATIVE EVIDENCE OR DATA

POINT IV

THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL DID NOT SUPPORT PLAlNTflFF’S] POSITION AND THE COURT’S RULING THAT THE PROPERTY SHOULD BE VALUED AS A CLASS A OFFICE BUILDING SHOULD BE REVERSED.
In its cross-appeal, Hemisphere presents the following issues:

POINT VI

THE TRIAL JUDGE’S EXCLUSION OF THE COST OF TENANT IMPROVEMENTS FROM OPERATING EXPENSES WAS PLAINLY ARBITRARY AND INCONSISTENT WITH THE SUBSTANTIAL CREDIBLE EVIDENCE PRESENTED AT TRIAL.

POINT VII

THE TRIAL JUDGE’S DETERMINATION AS TO THE COST OF NECESSARY WINDOW REPLACEMENTS AND EXCLUSION OF ANY DEDUCTION FOR CEILING TILE REPLACEMENTS WAS PLAINLY ARBITRARY AND INCONSISTENT WITH THE SUBSTANTIAL CREDIBLE EVIDENCE PRESENTED AT TRIAL.

POINT VIII

THE TRIAL JUDGE’S REDUCTION OF BRODY’S OPERATING EXPENSES BY ALMOST THIRTY PERCENT WAS PLAINLY ARBITRARY AND INCONSISTENT WITH THE SUBSTANTIAL CREDIBLE EVIDENCE PRESENTED AT TRIAL.
After carefully reviewing the record and applicable law in light of the contentions advanced by the parties, we conclude that the City’s arguments lack sufficient merit to warrant extended discussion in a written opinion, R. 2:11-3(e)(1)(E), and we affirm sub *288 stantially for the reasons stated by the trial court in its written decision dated August 4, 2005. With respect to the cross-appeal by Hemisphere, however, we conclude that the record does not support the trial court’s reduction of the estimated cost for new windows and the disallowance of any cost for the replacement of ceiling tiles. We therefore reverse and remand these two issues to the trial court.
The trial court gave the following description of plaintiffs property:
The subject property is an L-shaped lot of approximately 7.05 acres (307,225 sq. ft.). Access to the subject [property] is primarily from U.S. Routes 1 & 9 (“Route 1 & 9”), with several other entrances from bordering International Way. Directly across Route 1 & 9 from the subject property is Newark International Airport (“Airport”). Access to the New Jersey Turnpike is available a short distance away by either interchange 14 to the north or 13A to the south. The subject [property] is located approximately 3 to 4 miles from the central business district of Newark, in an area that may be characterized generally as hotels, motels, or parking lots serving the Airport. Indeed, a high rise hotel is immediately in front of the subject property facing Route 1 & 9, as is one to the rear.
A six story office building is currently located on the property, occupying an area of 227,088 square feet. A paved parking lot adjoins the building. The property is zoned “I-3 — Third Industrial District” by Newark. According to the zoning provision, Art. 11 Title 40:3-54, buildings in this district may be used for any purpose not in conflict with Newark City ordinances, subject to certain exceptions. Use as an office building is presumptively permitted, as well as hotels, motels, and other congregate living arrangements not constituting “dwelling quarters.”
After noting that plaintiffs complaint was filed in March 2003, the trial court set forth the procedural history of the case as follows:
Multiple pretrial conferences were held on this matter. On October 25, 2004, an initial pretrial conference was held. At that time, the court was advised that all discovery was complete. A second pretrial conference was held on December 13, 2004. Several settlement figures were discussed but no resolution was obtained, and a further conference was requested in lieu of a trial dale being set. Finally, a settlement conference was held on January 24, 2005, wherein the court set an appraisal report exchange schedule and a trial date of May 10, 2005, as a peremptory firm date, given the extensive delay in concluding this matter following extensive but unsuccessful settlement discussions.
Subsequent to the last conference, Hemisphere requested an extension of time to file its report, originally due on March 10, 2005. An extension was granted until April 7, 2005, and a report was timely filed with the court on that date. Newark, which did not object to Hemisphere’s extension nor express any concerns as to delays in submitting its own appraisal report, had thirty days thereafter to tender same, resulting in a due date of not later than May 7, 2005, instead of April 9, 2005. *289 Neither party at that time requested an adjournment of the trial date. No timely request was made by Newark to extend the report submission or trial deadlines. It was only the court’s inquiry on the eve of trial as to the absence of its report that belatedly caused Newark to simply advise that no report was prepared, no time frame for its preparation or conclusion was volunteered, but it would be requested that the scheduled trial be adjourned on the scheduled trial date when it was to appear. As a result, Newark was barred from submitting an appraisal report at the trial the following day. See 525 Realty Holding Co. v. Hasbrouck Heights, 3 N.J.Tax 206 (Tax 1981) (wherein only “extraordinary circumstances,” not present or expressed in this matter, would warrant consideration of a further delay). However, Newark did participate in the trial (aided by its appraisal expert) and cross-examined witnesses, raised objections as to testimony and documentation submissions, and submitted a written factual and legal summation at the trial’s conclusion.
[Footnotes omitted.]
It is clear from these circumstances that the City failed to demonstrate good cause for an adjournment, and the trial court’s decision to deny its request to adjourn the trial date was not an abuse of discretion.
With respect to plaintiffs cross-claim, the trial court explained that it reduced the operative expenses proposed by plaintiff from $4.25 per square foot to $3.00 per square foot because the figures proposed by plaintiffs expert were based on “expense statements from the Gateway buildings, and Prudential Plaza,” which were not “comparable to this subject property.” The court also found that the proposed allowance for tenant improvements and reserves was “overstated,” and reduced the figure from $1.50 per square foot to $.75 per square foot in light of the size and age of plaintiffs building, and “the overriding theory that the entire property is in need of thorough overhaul at this time.” These explanations are plausible, the Tax Court’s analysis is entitled to deference, Disabilities Res. Ctr./Atl. & Cape May, Inc. v. City of Somers Point, 371 N.J.Super. 1, 9, 851 A.2d 792 (App.Div.2004), and there is sufficient evidence in the record to support these determinations.
With respect to the need for new windows, plaintiffs real estate appraiser, Mr. Brody, testified that the windows were in very poor condition, and needed to be replaced to improve the building’s environment and capacity. Mr. Brody testified that many of the window seals were broken and the windows were “foggy.” Mr. Dixon, a licensed professional engineer, who was *290 recognized by the court as an expert in “determining the need for and possible cost of rehabilitation and renovation of an existing commercial industrial structure,” provided similar testimony:
The windows in this building are double-paned insulated glass in a metal frame. The individual units themselves suffer from age as well as from vibration relative to the air traffic next to the airport. It is common to drive by the building and see that the glazing has lost its seal, and therefore, many of the units have condensing water vapor inside the glass.
Plaintiff also established the need to remove and replace the ceiling tiles throughout the building. According to Dixon, the ceiling is “in deplorable condition. It needs to be removed and redone even if no above-the-ceiling work is done. It’s ... broken, its missing tiles. The tiles can’t be matched.”
Mr. Brody estimated that it would cost $1,640,000 to replace the windows and $1,022,000 to remove and replace the ceiling tiles. The trial court agreed that replacement of the building’s windows was necessary, but reduced the proposed cost by $890,000 (from $1,640,000 to $1,250,000). The court also agreed that the ceiling tiles needed to be replaced, but found that “the cost of replacing same is unsubstantiated.”
As noted by Hemisphere, the Tax Court concluded that the sum of $1,250,000 “is realistic for a window replacement of this size,” but the court did not explain its reasons for reducing the estimate provided by plaintiffs expert. In addition, Mr. Brody testified that he relied upon information obtained from the Marshall Swift Valuation Services to calculate all of the estimated costs in his report, which was admitted into evidence. Accordingly, the evidence of the cost to replace the windows and ceiling tiles was identical to the evidence that the court accepted and relied upon to calculate the cost of repairing or replacing other items in the building. We conclude therefore that the trial court’s findings and conclusions regarding the windows and ceiling tiles are not supported by the record, and those matters are reversed and remanded for reconsideration and redetermination.
On the City’s appeal, we affirm; on Hemisphere’s cross-appeal, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.